284 So.2d 33 (1973)
INTERSTATE LIFE AND ACCIDENT INSURANCE COMPANY
v.
Johnnie R. FLANAGAN.
No. 47203.
Supreme Court of Mississippi.
October 1, 1973.
Rehearing Denied October 29, 1973.
Wells, Wells, Marble & Hurst, John E. Hughes, III, Jackson, for appellant.
Liston & Upshaw, Winona, for appellee.
RODGERS, Presiding Justice.
This case came to this court as an appeal from the decree of the Chancery Court of Montgomery County, Mississippi, in favor of the appellee on an insurance policy in which she was the beneficiary.
The testimony in this case shows that on July 30, 1963, Cletus R. Flanagan (deceased husband of appellee) submitted a signed application to the appellant, Interstate Life and Accident Insurance Company, for a policy of life insurance. Mr. Flanagan made application for a ten-year term life policy in the face amount of ten thousand dollars ($10,000.00) and also requested a provision for double indemnity payable to the beneficiary in a sum equal to the face amount of the policy.
The insurance company issued a policy in accordance with this application on August 21, 1963. The policy provided that during the effective term of the policy the insurance could be converted to a policy of permanent life insurance after notice to *34 appellant and in consideration of surrendering the term policy.[1]
In April, 1970, the agents of the appellant approached Mr. Flanagan and consulted with him about exercising his conversion privilege under the terms of the policy, so as to convert his term policy into a regular permanent life insurance policy for the face amount of ten thousand dollars ($10,000.00). Mr. Flanagan filed a request for a conversion on Form "L-M 16".
An agent for the insurance company delivered the new regular life insurance policy to Mrs. Flanagan. This policy had attached to it the original application submitted by Mr. Flanagan for the term policy. This original application contained the request for double indemnity benefits which were originally provided under the term policy. The new regular life insurance policy itself did not specifically contain double indemnity benefits. However, written on the first page of the new policy was this statement: "This policy and the application, if a copy is attached, constitute the entire contract."[2]
The new regular life policy was issued on May 14, 1970, and the premiums were paid thereon until September 11, 1970, which included the time when the insured Cletus R. Flanagan was killed when an automobile on which he was working fell on him. There is no issue as to the fact that the decedent died of accidental means.
After the death of the insured, appellee filed a claim with the appellant for the face amount of the contract plus double indemnity benefits. The appellant paid the face amount of the policy to the appellee, but refused to pay double indemnity benefits. The appellee, therefore, filed suit for specific performance for the contract of insurance. The trial court, after having heard the testimony, awarded double indemnity benefits to the appellee; whereupon, the appellant has appealed to this court.
The appellant has assigned several errors, but we are of the opinion that only *35 one assignment need be discussed under the circumstances in this case. That is to say, the trial court erred in applying the law to the established facts upon which this case is based.
Mrs. Johnnie Rachel Flanagan Burleson, the beneficiary in both the term policy and the regular life policy, testified that at the time her husband converted the original term policy to a regular life policy they desired the same benefits in the regular life policy as were afforded by the term policy. She testified that at the time the agent, Mr. Lemley, delivered the policy she asked if this policy was the same as the other policy and whether or not double indemnity was afforded. She testified that the agent said that he would check and let her know, but that he never came back. She also testified, however, that she talked with her husband as to whether or not the policy had double indemnity, but that they decided to keep it in force. Mr. Lemley, the agent, testified that he told Mrs. Flanagan that the policy did not contain double indemnity, but that it could be added if she so desired. Mr. Tingle, a witness for the appellant, testified that in the sentence in the term policy, "The new policy shall not contain additional benefits for disability or accidental death if you do not furnish evidence of insurability satisfactory to us, or if the new policy is issued as of the date of exchange and your attained age exceeds 55 years", the words "additional benefits", although they might not be clear to everybody, were clear to the people who understood them. He also testified that Application L-M 16 for a change to a permanent policy was never attached to the new policy, but that the original application was attached. He further testified that the new life policy was not issued pursuant to the application, but on the basis of the L-M 16 conversion form.
The first issue to be determined is whether or not the application attached to the new policy should be considered a part of the contract of insurance. The appellant contends that the application itself is for a term policy of life insurance and that the new ordinary life policy was issued pursuant to the conversion Form L-M 16 and not as a result of the application, and that the application was attached to provide certain information for the insured.
In determining whether or not the application is a part of the new life policy, we find that on the first page of the ordinary life policy under the heading "The Contract", the following sentence appears: "This policy and the application, if a copy is attached, constitute the entire contract." This application is the only application made for a life insurance policy.
The text writers on insurance contracts seem to be in agreement that the application attached to a contract is a part of an insurance contract. For example, see the following authorities.
"An application which has been accepted, as considered supra § 232, and which complies with the statutory requirements with regard to its being attached to the policy, as considered supra § 258, is a part of the contract of insurance, and is to be read and construed in connection with the policy and other papers, if any, constituting the contract, where it and the policy and other papers are executed as part of one transaction, or where an intent to make the application a part of the contract is otherwise manifest, as where the policy refers to the application and expressly makes it a part of the policy." 44 C.J.S. Insurance § 301(a), at pp. 1209-1210 (1945).
In 43 Am.Jur.2d Insurance § 208, at 265 (1969) is the following statement:
"The application for a policy of insurance becomes a part of the contract if it is made a part thereof by the express terms of the policy ..."
Couch, in his treatise on insurance law, sets forth the following rules:
"The contents of an application for insurance have no contractual force where *36 the application is not made a part of the policy, but where properly incorporated in the policy, the application forms an integral part thereof." Couch on Insurance 2d, Vol. 1, § 4.2, at 151 (1959).
"The application is ordinarily made a part of the policy by expressly stating in the policy that the application is made a part thereof, or by making such a reference and attaching a copy of the application to the policy." Couch on Insurance 2d, Vol. 1, § 4.3, at 152-153 (1959).
See also Appleman, Insurance Law & Practice, Vol. 13, § 7582, at 334 (1943).
If, however, we accept the general theory that an application for the term policy became a part of the ordinary life insurance policy, the question still remains in the instant case as to whether or not considering these two instruments together, the contract includes double indemnity benefits. The appellant argues that the application is only an offer to contract, and the insurer is free to accept it as written or issue a policy different from the application and, in that case, the policy itself will be determined a counter-offer. A counter-offer having been made, the insured is free to accept the counter-offer as is, or reject it in whole or in part. If the insured accepts it as it is and pays the premiums thereon, the insured ratifies the changes made in the policy issued by the company.
There seems to be ample authority to support the foregoing position. The appellee apparently concedes this to be a true statement of the law, but argues that it is not properly applied to the facts in this case by the appellant.
The text writer in Corpus Juris Secundum speaks on the matter as follows:
"An application for insurance, which is the preliminary statement made by a person applying for insurance, is not of itself a contract, but is simply a request, proposition, or proposal for, or offer to accept a contract or policy of insurance, and does not become a contract of insurance unless, and until, it is accepted by the company. The company is at liberty to accept or reject it, and it is not precluded from stating the terms on which it will accept the insurance, ..." 44 C.J.S. Insurance § 232a(1) (b), at pp. 969-971 (1945).
To the same effect is 43 Am.Jur.2d Insurance § 208, at 265 (1969). As to counter-offers, the principle of law is set forth at 43 Am.Jur.2d Insurance § 211, at 268 (1969):
"Where the insurer tenders a policy at variance with the application, the tender constitutes a counter-offer... . Upon acceptance by the applicant of the policy at variance with his application, the varied policy becomes a contract between the parties."
So, the rule is that after such a counter-offer, the insured must accept or reject the policy issued according to the terms of the insurer.
In his treatise on insurance, Appleman stated the rule as follows:
"Where the insured receives a policy not conforming exactly to the one he desired, he may either accept or reject it, but if he desires to reject it, he must act within a reasonable time, so that his retention of the policy beyond a reasonable time may be taken as an acceptance of it." Appleman, Insurance Law & Practice, Vol. 12, § 7152 at 209 (1943).
See also 44 C.J.S. Insurance § 232a(1)(c), at p. 972 (1945); Couch on Insurance 2d, Vol. 1, § 7:17 at 329 (1959).
The Mississippi Supreme Court has recognized the principle of "counter-offer" in such situations in New York Life Insurance Company v. McIntosh, 86 Miss. 236, 38 So. 775 (1905). The above case and principle were cited with approval by this court in Old Equity Life Insurance Company v. Jones, 217 So.2d 648, at 651 (Miss. 1969).
*37 The question is whether or not the new ordinary life insurance policy was a counter-offer, and this depends on whether or not the policy "differed materially" from the application or was issued "at variance" with the application. If the question is answered in the affirmative, then when appellant's agent delivered the ordinary life policy to the Flanagan home, he was making a counter-offer, and in order for the contract to be binding, the insured must have accepted it. The insured retained the policy and paid the premiums thereon until his death, approximately four (4) months later. The appellee argues that the new policy was not at variance nor in conflict with the application and, therefore, is not a counter-offer, and was not accepted as such. It will be noted that the policy contains no provision for double indemnity, but the application does. Moreover, there is no premium charged for double indemnity benefits under the new policy. On the other hand, separate charges were made for double indemnity under the original term policy. It is clear, therefore, that the insured's retention of the policy as issued was an acceptance of the policy as written and, therefore, we can reach but one conclusion  the contract of insurance does not contain double indemnity benefits.
The mere fact that Mrs. Flanagan intended that the policy contain double indemnity benefits is not sufficient to make this policy include double indemnity benefits.
Where there is a conflict between the policy and the application for a policy, the terms of the policy will ordinarily govern. At least two of the text writers have spoken on this subject.
"While the policy and the application are ordinarily construed together, in the event of conflict between their provisions, the terms of the policy govern.
* * * * * *
In the event of such conflict, the policy, not including the application, is considered to embody the contract of the parties." Appleman, Insurance Law & Practice, Vol. 13, § 7583, at 339-40 (1943).
Another leading authority had this to say:
"If there is an irreconcilable conflict between an application and the policy proper, the latter ordinarily is regarded as controlling." Couch on Insurance 2d, Vol. 1, § 15:32, at 703 (1959).
There are certain exceptions to this rule which were mentioned in the section cited above, relating to clerical errors, mistakes, etc., but none of them was applicable to the case at hand.
In conclusion, although it appears that the Flanagans wanted double indemnity benefits in the ordinary life policy, the policy as issued did not contain such benefits. This conclusion is based on the theory of "offer and acceptance" as discussed earlier. Also, to the extent the application and policy are inconsistent, the general rule provides that the policy controls.
There are exceptions to the general rule as stated by the foregoing text writers, but these exceptions do not apply in this case. We must conclude, therefore, that the policy for ordinary life insurance in this case did not include double indemnity and that the chancellor erred in holding the appellant liable for double indemnity.
The other issues raised in the trial court below are not essential for the determination of this case and, therefore, are not reached.
Reversed and rendered.
INZER, ROBERTSON, WALKER and BROOM, JJ., concur.
NOTES
[1] "CHANGE IN POLICY PLAN: Upon a written request signed by the owner and surrender of this policy to us at our Home Office, this policy may be exchanged without medical examination for any policy of the same face amount issued by us except Term, at the same mortality classification on which this policy was issued. This policy must be in force with no premium in default and with no claim for disability benefits, if any. The new policy shall not contain additional benefits for disability or accidental death if you do not furnish evidence of insurability satisfactory to us, or if the new policy is issued as of the date of exchange and your attained age exceeds 55 years. It may be exchanged as follows:

(1) If the exchange is made as of the Contract Date of this policy, we must be paid the greater of either (a) the differences between the premiums paid and the premiums which would have been paid had it originally been issued on the new plan, with interest on such differences from the various due dates to the date of exchange with interest at 6 per cent compounded annually; or (b) the reserve value on the new policy plus 6 per cent less the reserve on this policy at the date of exchange. The new policy shall bear the same date and issue age of this policy, and shall be at the rate of premium in use for the new plan at the Contract Date of this policy.
(2) If the exchange is made as of the date of exchange, your age upon the birthday nearest the date of the exchange shall determine the premium rate for the new policy according to our premium rate at that time. The reserve of this policy, if any, will be applied to the first and subsequent premiums of the new policy."
[2] "THE CONTRACT: This policy and the application, if a copy is attached, constitute the entire contract. All statements made by you or the applicant, in the absence of fraud, are deemed representations and not warranties and such statements may be used in defense of claim only if they are contained in the written application and a copy is attached to this policy when issued. If this policy was originally issued on the weekly payment basis and if, within two years before the date of issue of this policy you received institutional, hospital, medical or surgical treatment or attention, this policy will be void unless (1) the claimant shows that the treatment was not material to the risk, or (2) reference to the treatment is contained in the application for this policy, or (3) the policy has become incontestable. If the policy is void, the premiums will be refunded.