**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 99-60443

PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY,

Plaintiff-Counter Defendant-Appellee,

VERSUS

DINESH K. GOEL,

Defendant-Counter Claimant-Appellant.

Appeals from the United States District Court
for the Southern District of Mississippi

December 4, 2001

Before HIGGINBOTHAM, WIENER, and DENNIS, Circuit Judges.

DENNIS, Circuit Judge:

After suffering an injury to his hand that prevented him from performing surgery, Dr. Dinesh K. Goel sought disability benefits under a policy issued by Provident Life and Accident Insurance Company ("Provident"). Although it paid on the claim, Provident reserved its rights and ultimately brought this declaratory judgment action to rescind the policy, contending that Dr. Goel did not satisfy a condition precedent to coverage by failing to cancel

a disability policy he held with another insurer.  The district court granted summary judgment to Provident and denied Dr. Goel's subsequent motion for relief from judgment.  Our consideration of the record, the briefs, and the arguments presented by both parties convinces us that summary judgment was appropriate.  We further find that the district court did not abuse its discretion in denying Dr. Goel's Rule 60(b) motion for relief from judgment.  Accordingly, we affirm.

## I.   FACTS AND PROCEDURAL HISTORY

This action concerns the validity of a disability insurance policy issued by Provident to Dr. Dinesh K. Goel.  The circumstances surrounding the issuance of the policy date back to 1992.  At that time, Dr. Goel practiced as a surgical specialist in Jackson, Mississippi, where he continues to reside.  Although Dr. Goel maintained $11,000 a month in disability coverage with The Paul Revere Life Insurance Company, his financial obligations and rapidly rising income caused him to seek additional coverage.  To that end, Dr. Goel contacted Anil Sharma, a personal friend and Provident agent, to discuss increasing his coverage to approximately $25,000 a month.  Through Mr. Sharma, Dr. Goel submitted three applications for disability coverage with Provident.

On his first application, dated November 11, 1992, Dr. Goel stated that he did not have disability coverage.  Provident later

2

issued a policy that provided the $15,000 monthly benefit requested in the application. But after realizing that he did not disclose his Paul Revere coverage on the Provident application, Dr. Goel allowed this policy to lapse through non-payment of the first premium.

On June 21, 1993, Dr. Goel submitted his second application to Provident. In a letter dated September 27, 1993, a Provident Field Underwriter informed Mr. Sharma that "[i]n order for Mr. Goel to qualify for the $25,000 of benefit you requested, his income level would need to be upwards of $1,000,000.00 annually, to be considered as an exception to the Maximum Issue Rule."[1] Based on his $400,000 income in 1992, Provident advised Dr. Goel that it would issue him $15,000 a month in coverage if he agreed to cancel his Paul Revere policy.[2] Because Dr. Goel was unwilling to cancel his Paul Revere coverage, he allowed the second application to expire.

In 1993, Dr. Goel's income increased to over $719,000. This significant increase brought about Dr. Goel's third and final application to Provident on February 28, 1994. On his application, Dr. Goel disclosed his $11,000 policy with Paul Revere but answered "N/A" to the following question:

> 4.(f) If any coverage is to be replaced by the coverage applied for, the following coverage(s) will be

---

[1] R. at 504.

[2] *See id.*

> permanently cancelled within 30 days of the issue date or effective date, whichever is later, of the insurance coverage issued pursuant to this application.
>
> Co. Name_____          Amount $_____

In a "Personal History Interview" conducted in connection with his application, Dr. Goel again disclosed his Paul Revere policy and further indicated that he would not terminate his existing coverage. But Provident also maintained its position concerning the Paul Revere coverage: it would provide $15,000 a month in coverage only if Dr. Goel agreed to cancel his Paul Revere policy. Provident therefore prepared an Amendment to Dr. Goel's application that changed his answer to Question 4(f) from "N/A" to "Paul Revere."

On June 28, 1994, Provident approved and printed, along with the Amendment, a disability policy for Dr. Goel that provided a monthly benefit of $15,000. Instructions accompanying the Amendment and the policy directed the agent to obtain Dr. Goel's signature on the Amendment before releasing the policy to him.[3] The Amendment, relating to cancellation of the Paul Revere coverage, stated:

> In consideration of the issuance of the policy to which this amendment is attached, it is understood and agreed that my signed application dated February 28, 1994 is

---

[3] Provident actually sent two copies of the Amendment along with the policy and instructed the agent to have Dr. Goel sign both the copy that would be returned to Provident's Home Office and the copy that would remain with the policy. Although the Home Office received its original signed copy, Dr. Goel did not sign the copy attached to his policy.

4

amended as follows:

> THE ANSWER TO QUESTION 4F IS CHANGED TO READ: "PAUL REVERE"

Neither Dr. Goel nor the agent, Mr. Sharma, recalls the Amendment or when it was signed.[4] But Provident did receive the signed Amendment, and a copy remains in its underwriting file.[5] Moreover, Dr. Goel retained the policy as issued and paid the monthly premiums.

On October 26, 1996, Dr. Goel suffered a disabling injury to his hand that prevented him from performing surgery. He later sought benefits under the Provident policy. During its investigation of his claim, Provident discovered that Dr. Goel had not cancelled his Paul Revere coverage. Provident therefore elected to pay benefits under a reservation of rights.

On April 16, 1997, Provident filed a Complaint for Declaratory Judgment and Other Relief seeking to rescind and cancel the

---

[4] Although Provident did not print the policy and the Amendment until June 28, 1994, the signed Amendment bears the date of June 26, 1994--an impossibility. Dr. Goel argues that this discrepancy creates a genuine issue of material fact concerning the validity of the signed Amendment. *But see infra* Part II.B.(2).

[5] Lester Duncan, Provident's Rule 30(b)(6) underwriting witness, testified in his deposition that if the signed Amendment had not been returned in a timely manner, the policy would have automatically been cancelled as of July 8, 1994, its original effective date.

Mr. Duncan also testified that during the period of time relevant to this suit, Provident maintained its records on microfilm. After a document was microfilmed, the original was destroyed. As a result, the paper copy of the Amendment in the underwriting file is a copy made from the microfilm.

disability policy and recover all benefits paid to Dr. Goel.  In its Complaint, Provident alleged that it issued the policy to Dr. Goel "on the condition or promise of Goel that he would cancel his Paul Revere coverage."  According to Provident, Dr. Goel's failure to cancel the Paul Revere policy rendered the Provident policy "voidable."  Dr. Goel answered the Complaint and filed a Counterclaim demanding damages from Provident for bad faith breach of contract.  Dr. Goel also invoked the incontestability provision of the Provident policy[6] and raised affirmative defenses of waiver, estoppel, and fraud.  Provident denied Dr. Goel's allegations in its Answer to the Counterclaim.

On February 20, 1998, Dr. Goel filed a Motion for Partial Summary Judgment on his contract claim; Provident responded three days later with a Motion for Summary Judgment on its complaint.  On September 28, 1998, after hearing oral argument on the parties' motions, the district court granted Provident's motion and denied Dr. Goel's motion.  In reaching its decision, the court relied on the Amendment to Question 4(f) of Dr. Goel's application and found that Dr. Goel breached a condition precedent to coverage by failing to cancel his Paul Revere policy.  The district court reasoned that the policy--presented along with the Amendment to the application--

---

[6] Page 13 of the policy, under the heading "TIME LIMIT ON CERTAIN DEFENSES," provides that "[a]fter two years from the Effective Date of this policy, no misstatements, except fraudulent misstatements, made by you in the application for this policy will be used to void the policy or to deny a claim for loss incurred or disability that starts after the end of such two year period."

6

constituted a counter-offer by Provident that Dr. Goel accepted by signing the Amendment, retaining the policy, and paying the required premiums.

Following the entry of judgment, Provident filed a Motion to Amend Final Judgement asking the district court to "specify the amount of the Plaintiff's recovery and the amount of interest it is entitled to receive until the judgment is paid." Dr. Goel later filed a Rule 60(b)[7] Motion for Relief from Judgment, in which he claimed to have "new evidence indicating that [he] never signed the application amendment, but that his signature was forged." This "new evidence" consisted of a report prepared by Mr. Frank Hicks, a handwriting expert who concluded that Dr. Goel's signature on the Amendment was probably forged. On May 24, 1999, the court entered an Amended Final Judgment ordering Dr. Goel to pay Provident $274,413.38, plus post-judgment interest on this amount from September 28, 1998, until paid, less an offset of $36,401.40 for premiums paid. Dr. Goel filed a Notice of Appeal on June 22, 1999.

Although he had filed a Notice of Appeal from the Amended Final Judgment, Dr. Goel's Rule 60(b) motion was still pending in the district court. In August 1999, the district court "terminated" the motion, reasoning that Dr. Goel's appeal rendered the motion moot. Dr. Goel submitted a motion for reconsideration

---

[7] FED. R. CIV. P. 60(b).

of that ruling, contending that a Rule 60(b) motion should be addressed on the merits rather than terminated as moot. The district court agreed with this contention. Therefore, on March 29, 2000, after full review and consideration of the motion, the district court denied it on the merits. In addition to his appeal from the Amended Final Judgment of June 22, 1999, Dr. Goel also appeals from the denial of his Rule 60(b) motion.

## II. SUMMARY JUDGMENT

### A. Standard of Review

"We review a district court's award of summary judgment under the same standards that the district court applied to determine whether summary judgment was appropriate."[8] "Summary judgment is appropriate if the record discloses 'that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"[9] In making such a determination, the district court must look to "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. . . ."[10] It therefore follows that "our review is confined to an examination of materials before the

---

[8] *State Farm Fire & Cas. Ins. Co. v. Keegan*, 209 F.3d 767, 768 (5th Cir. 2000) (citing *Herrera v. Millsap*, 862 F.2d 1157, 1159 (5th Cir. 1989)).

[9] *Id.* (quoting FED. R. CIV. P. 56(c)).

[10] FED. R. CIV. P. 56(c).

8

[district] court at the time the ruling was made; subsequent materials are irrelevant."[11]

The party moving for summary judgment must establish that there are no genuine issues of material fact. "Once the moving party makes that showing, however, the burden shifts to the nonmoving party to show that summary judgment is not appropriate."[12] Thus, to defeat a motion for summary judgment, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"[13] "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. . . . The evidence of the non-movant is to be believed, and all justifiable inferences

---

[11] *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1307 (5th Cir. 1988) (citing *Ingalls Iron Works Co. v. Fruehauf Corp.*, 518 F.2d 966, 967 (5th Cir. 1975)). *See also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1071 n.1 (5th Cir. 1994) (en banc) (We are "limited to the summary judgment record and the plaintiffs may not advance on appeal new theories or raise new issues not properly before the district court to obtain reversal of the summary judgment."); 11 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 56.41[3][c] (3d ed. 1997) ("As a general rule, arguments and evidence not presented in the district court in connection with a summary judgment motion are waived on appeal and the appellate court will be unable to consider these materials in its review of the district court's decision.").

[12] *Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991).

[13] *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting FED. R. CIV. P. 56).

are to be drawn in his favor."[14]

B.    Analysis

On appeal, Dr. Goel raises four arguments as to why summary judgment was inappropriate: (1) the Amendment is ambiguous and, construed against Provident, does not support recission of the policy; (2) a factual dispute exists as to whether Dr. Goel signed the Amendment; (3) the district court's analysis disregarded Dr. Goel's claims of waiver, estoppel, fraud, and bad faith; and (4) the incontestability provision in the policy probibits Provident from denying coverage.


(1)  *Ambiguity and Contract Construction*

Dr. Goel contends that the language of Question 4(f)[15] on the Provident application is ambiguous because it only asks for the name of the policy to be cancelled "if" coverage is to be replaced; it does not address the threshold issue of **whether** coverage will be replaced.  Thus, in his view, "[t]he particular wording of the response [to Question 4(f)], even if amended, does not

---

[14] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

[15]

> 4.(f)  If any coverage is to be replaced by the coverage applied for, the following coverage(s) will be permanently cancelled within 30 days of the issue date or effective date, whichever is later, of the insurance coverage issued pursuant to this application.
>
> Co. Name_____     Amount $_____

10

unambiguously require cancellation of the Paul Revere policy."[16]
This ambiguity, according to Dr. Goel, required the district court
to construe the language in the insurance contract against
Provident and in favor of coverage.

Mississippi courts strictly construe any ambiguity in an
insurance policy against the insurer.[17] A condition tending to
defeat a policy "must be expressed or so clearly implied that it
cannot be misconstrued."[18] The fact remains, however, that
"insurance policies are contracts, and their construction and
interpretation 'is according to the same rules which govern other
contracts.'"[19] In *Cherry v. Anthony, Gibbs, Sage*,[20] the Supreme
Court of Mississippi offered the following explanation of those
rules:

> The most basic principle of contract law is that
> contracts must be interpreted by objective, not
> subjective standards. A court must effect a
> determination of the meaning of the language used, not
> the ascertainment of some possible but unexpressed intent
> of the parties. The mere fact that the parties disagree

---

[16] Appellant's Opening Brief at 21–22.

[17] *See Burton v. Choctaw County*, 730 So. 2d 1, 8 (Miss. 1997).

[18] *Home Ins. Co. v. Thunderbird, Inc.*, 338 So. 2d 391, 394 (Miss. 1976) (quoting 2 GEORGE J. COUCH, COUCH ON INSURANCE § 15:93 (2d ed. 1959)).

[19] Keith A. Rowley, *Contract Construction and Interpretation: From the "Four Corners" to Parol Evidence (And Everything in Between)*, 69 MISS. L.J. 73, 181 (1999) (quoting *Krebs v. Strange*, 419 So. 2d 178, 181 (Miss. 1982)).

[20] 501 So. 2d 416 (Miss. 1987).

11

about the meaning of a provision of a contract does not make the contract ambiguous as a matter of law. Parole [sic] evidence as to surrounding circumstances and intent may be brought in where the contract is ambiguous, but where . . . the contract . . . [is] unambiguous it has no place. The parties are bound by the language of the instrument.[21]

Thus, "[u]nder Mississippi contract law, if an insurance policy is unambiguous, its terms must be given their plain meaning and enforced as written."[22] Furthermore, "[w]hen construing a contract, . . . [the court must] read the contract as a whole, so as to give effect to all of its clauses."[23]

Mississippi law also provides that an application for insurance is simply an offer to contract.[24] The potential insurer is free to accept the offer as written or it may issue a policy different from the one requested in the application.[25] In the latter case, the policy itself is a counter-offer, and "the rule is that after such a counter-offer, the . . . [applicant] must accept

---

[21] *Id.* at 419 (internal quotations and citations omitted). *See also* Rowley, *supra* note 19, at 145-46 ("Generally, Mississippi courts will not consider evidence of surrounding circumstances unless their 'four corners' analysis of the written agreement suggests that the agreement is ambiguous, incomplete, or both.").

[22] *Am. Guar. & Liab. Ins. Co. v. 1906 Co.*, 129 F.3d 802, 805 (5th Cir. 1997) (citing *Am. States Ins. Co. v. Nethery*, 79 F.3d 473, 475 (5th Cir. 1996) & *Aero Int'l, Inc. v. United States Fire Ins. Co.*, 713 F.2d 1106, 1109 (5th Cir. 1983)).

[23] *Brown v. Hartford Ins. Co.*, 606 So. 2d 122, 126 (Miss. 1992).

[24] *Interstate Life & Accident Ins. Co. v. Flanagan*, 284 So. 2d 33, 36 (Miss. 1973).

[25] *Id.*

or reject the policy issued according to the terms of the insurer."[26]

The district court applied these principles to the facts of this case in the following manner:

> [T]his court is satisfied that Goel's application in which he requested $15,000.00 a month in coverage in addition to (i.e., without canceling) his existing Paul Revere coverage was an offer. Provident declined to accept his offer, as it had in the past. When Provident issued Goel a policy with an amendment to the application that required him to cancel his Paul Revere coverage, the policy constituted a counter-offer. The evidence is undisputed that Goel signed the amendment, retained the policy and paid the premiums required by the policy, and, by doing so, he accepted the policy as written by Provident. Looking at the "four corners" of the Provident policy, the court finds that the policy unambiguously required that Goel cancel his Paul Revere coverage as an express condition and consideration for receiving the Provident policy.[27]

We agree with the district court. "[T]he application attached to or giving rise to an insurance policy is a part of the insurance contract, and the policy should be construed together with the application."[28] Here, the insurance contract includes the policy, Dr. Goel's application, and the Amendment to the application. Reading the contract as a whole, we find that it is unambiguous; its terms must therefore be given their plain meaning and enforced as written. Turning, with this obligation in mind, to Question

---

[26] *Id.*

[27] R. at 622 (paragraph break omitted).

[28] Rowley, *supra* note 19, at 184 (citing *Flanagan*, 284 So. 2d at 35).

13

4(f), it becomes clear that the words "If any coverage is to be replaced" mean that information is required only from those applicants who are replacing existing coverage. Regardless, then, of Dr. Goel's subjective intent, by responding "Paul Revere" to Question 4(f), he agreed to permanently cancel his Paul Revere coverage within 30 days of the effective date of the Provident policy. Any other construction would render Question 4(f) meaningless. Thus, we reject Dr. Goel's contention that the language of and amended response to Question 4(f) is ambiguous, and we decline to reverse the district court on this ground.

(2) *Validity of Dr. Goel's Signature on the Amendment*

Mississippi law prohibits the alteration of a written application for insurance without the "written consent" of the applicant.[29] Dr. Goel asserts that he did not sign the Amendment to his application, and, as a consequence, the Amendment constitutes an alteration without his written consent in violation of Mississippi law. In determining whether a genuine issue of material fact exists with respect to the validity of Dr. Goel's signature on the Amendment so as to preclude summary judgment, we may only consider evidence in the record at the summary judgment stage.[30]

---

[29] MISS. CODE ANN. § 83-9-11(2) (1972).

[30] *Nissho-Iwai*, 845 F.2d at 1307.

14

On summary judgment, Dr. Goel stated that while the signature looked like his, he did not remember signing the Amendment.[31] The district court noted that Dr. Goel "did not deny that he signed the amendment in his response to plaintiff's motion for summary judgment. Defense counsel also admitted at oral argument that Goel signed the copy of the amendment that was returned to Provident."[32] In Dr. Goel's deposition, when asked about the Amendment to the application changing his answer to Question 4(f) to read "Paul Revere," he did not allege forgery or fraud:

Q.   Okay.  Had you ever seen [the Amendments] before?

A.   I don't remember seeing them before.

Q.   All right.  Is that your signature on there?

A.   Yes.  It's a photocopy of my signature.

Q.   It's a what?

A.   This is a photocopy of my signature.

Q.   Well, this--the document is a photocopy?

A.   Yes.

....

Q.   Okay.  Is that your handwriting [on the Amendment] where it says "Signed at Jackson, Mississippi this

---

[31] Despite his lack of recall, in response to Provident's motion for summary judgment, Dr. Goel stated that in his "best judgment," the Amendment was "probably executed in the event Provident decided to write the entire $25,000.00 coverage."  R. at 573.

[32] R. at 619.

15

26th day of June"?

A.   Yes, that's my handwriting.

Q.   Okay.  Well, as we sit here today, do you have any question in your mind whether or not you actually got those documents and signed them at some point?

A.   Well, when these documents came unsigned with my policy, I did not pay attention one way or the other.  I just had a policy.  I briefly looked at it.  I put it in my file and forgot about it.  I thought I have [sic] coverage and went my way.[33]

The only instance where Dr. Goel denied signing the Amendment was in his Answer to Provident's Complaint For Declaratory Judgment and Other Relief.  Paragraph 7 of Provident's Complaint states, in part: "On or about June 26, 1994, Goel agreed, by a signed amendment to his application, that he would cancel his Paul Revere coverage within 30 days of the issue date or effective date of his Provident policy."  Correspondingly, Paragraph 7 of Dr. Goel's Answer states, in full, that "[t]he allegations in Paragraph 7 are denied."  Not until he submitted his Rule 60(b) motion did Dr. Goel resurrect this assertion.  Indeed, the above general denial is the only portion of the record cited by Dr. Goel in his appellate brief to support his current claim that he alleged forgery throughout the course of this litigation.  After an exhaustive search of the

_____

[33]  R. at 718-20.

16

record, we find that at no time prior to the entry of summary judgment did Dr. Goel submit evidence demonstrating that he did not sign the Amendment.

Even if Dr. Goel had alleged forgery and directed the district court to his Answer in support of this contention, such a general denial in an original pleading is insufficient to create an issue of material fact. "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."[34] "[T]he apparent existence of a factual dispute based on a denial in the answer or an allegation in the complaint does not automatically defeat a Rule 56 motion. If it did, the rule could be rendered nugatory by clever pleading."[35] In fact, the purpose of the 1963 revision to Rule 56(e) was to prevent the nonmoving party from merely relying on his pleadings when the moving party supported his motion for summary judgment with affidavits and other evidence.[36]

In sum, to defeat Provident's motion for summary judgment, Dr. Goel was required to "present affirmative evidence" and "set forth

---

[34] *Anderson*, 477 U.S. at 256.

[35] 10A CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2712, at 211 (3d ed. 1998).

[36] *Id.*

17

specific facts showing that there [wa]s a genuine issue for trial."[37] Dr. Goel's unsworn Answer to Provident's complaint is insufficient to satisfy this burden.[38] We therefore refuse to disturb the district court's ruling on this ground.[39]

(3) *"Four Corners," Waiver, Estoppel, Fraud, and Bad Faith*

Dr. Goel next argues in his brief that the district court's "four corners" analysis disregarded substantial evidence of knowledge, bad faith, and inequitable conduct by Provident supporting Dr. Goel's claims of waiver, estoppel, fraud, and bad

---

[37] *Anderson*, 477 U.S. at 256-57.

[38] *See Ratner v. Young*, 465 F. Supp. 386, 389 n.5 (D.V.I. 1979) ("A non-movant cannot rely upon his own unverified pleading to contradict factual matters properly before the court in support of the motion [for summary judgment].").

[39] Dr. Goel further attempts to create a factual issue regarding the Amendment by contending that irregularities concerning the date of the Amendment and Provident's destruction of the original policy preclude summary judgment. Because we find no genuine issue of material fact as to the validity of Dr. Goel's signature, we also find that the date discrepancy and Provident's internal document management procedures do not render summary judgment inappropriate. Indeed, Provident concedes that the date on the Amendment, June 26, 1994, is incorrect because the Amendment was not printed until June 28, 1994. But this issue is neither disputed nor material, and therefore it does not preclude summary judgment. Furthermore, the fact that Provident's physical copy of the Amendment was microfilmed and then destroyed does not constitute a genuine issue of material fact. Although the facts and legitimate inferences therefrom are to be viewed in a light most favorable to Dr. Goel, nefarious intention on the part of Provident is not a legitimate inference that can be drawn from its document management procedures.

faith.  As a preliminary matter, we reject Dr. Goel's contention that the district court erred in conducting a "four corners" analysis of the insurance contract.  The prevailing method of contractual construction and interpretation under Mississippi law requires courts to make a threshold finding that the "four corners" of the instrument reveal some ambiguity before resorting to other interpretational aids.[40]  Employing this method, the district court correctly found the insurance contract to be unambiguous and enforced its terms as written.  In view of our earlier determination of the plain meaning of Dr. Goel's contract with Provident, his scattershot allegations of inequitable conduct by Provident are unpersuasive.

Although Dr. Goel identifies fraud and bad faith as grounds for his appeal, he does not discuss the elements required to establish these claims.  Moreover, his contention that "Mr. Sharma's actions in delivering a policy that differed materially from the one requested by Goel" constitute substantial evidence of bad faith that is imputed to Provident through agency principles further ignores Mississippi law.  "In Mississippi, an insurer is under no duty to insure every applicant and is in fact free to state the terms upon which insurance may be obtained."[41]  Thus,

---

[40] Rowley, *supra* note 19, at 86.  *See generally Pursue Energy Corp. v. Perkins*, 558 So. 2d 349 (Miss. 1989).

[41] *Gladney v. Paul Revere Life Ins. Co.*, 895 F.2d 238, 241 (5th Cir. 1990) (citing *Flanagan*, 284 So. 2d at 36).

Provident was free to make a counter-offer to Dr. Goel upon receipt of his application.[42] Finally, to the extent that Dr. Goel invites us to ignore the summary judgment record and consider his new suggestion that Provident forged his signature on the Amendment, we decline the invitation.[43] Because Dr. Goel failed to present affirmative evidence of fraud and bad faith to the district court, these claims do not preclude summary judgment.

Dr. Goel's waiver and estoppel arguments also lack merit. Knowledge of the contents of an insurance policy is imputed to an insured as a matter of law.[44] Moreover, "[a] person cannot avoid a signed, written contract on the grounds that he did not read it."[45] Despite the clarity of these bedrock principles, Dr. Goel asserts that he never intended to cancel his Paul Revere coverage. He further contends that Provident waived, or is estopped from asserting, the condition precedent to coverage because Mr. Sharma possessed knowledge, imputable to Provident, that Dr. Goel would not cancel his Paul Revere policy.

"It is a long-settled rule of law in Mississippi that the doctrines of waiver and estoppel may not operate to create coverage

---

[42] *See supra* Part II.B.(1).

[43] *See Nissho-Iwai*, 845 F.2d at 1307.

[44] *Cherry*, 501 So. 2d at 419.

[45] *Hicks v. Bridges*, 580 So. 2d 743, 746 (Miss. 1991).

20

or expand existing coverage to risks expressly excluded."[46] But Dr. Goel relies on a "counterpart to the rule just stated: that a forfeiture provision may be waived."[47] The Supreme Court of Mississippi has construed conditions precedent as forfeiture provisions. For example, in *Southern United Life Insurance Co. v. Caves*,[48] the agent knew that a credit life insurance applicant had a serious heart condition at the time he completed the application. The policy provided, as a condition precedent to coverage, that the insured had to be in insurable health at the time of issuance. When Mr. Caves died of a heart attack, the insurer discovered that he did not meet the condition precedent and therefore rejected his widow's claim. The court found that the agent "accepted payment of the premium knowing of the serious pre-existing condition of the insured which she failed to communicate to the company. As a matter of law, this knowledge was imputed to the principal, Southern United. The condition of insurability was effectively waived and the acts are binding upon the company."[49]

A critical distinction exists between *Caves* and the present

---

[46] *Pongetti v. First Continental Life & Accident Co.*, 688 F. Supp. 245, 248 (N.D. Miss. 1988) (citing *Mississippi Hosp. & Med. Serv. v. Lumpkin*, 229 So. 2d 573, 576 (Miss. 1969)).

[47] *Id.* (citing *Morris v. Am. Fid. Fire Ins. Co.*, 173 So. 2d 618 (Miss. 1965)).

[48] 481 So. 2d 764 (Miss. 1985).

[49] *Id.* at 767.

matter. While the agent in *Caves* possessed knowledge of **existing facts** on which the insurer would have based a refusal to issue coverage, the record in this case contains no indication of similar misconduct on the part of Mr. Sharma. Put differently, Mr. Sharma did not fail to inform Provident of an existing circumstance or condition concerning Dr. Goel that the company would have taken into account in deciding whether to issue a policy. It follows, then, that "an insurance company is not bound by the knowledge of its soliciting agent as to the future intention of an insured in regard to violation of any conditions of the policy. . . ."[50] A contrary conclusion would disregard the cardinal principles of Mississippi contract law. Provident was free to condition coverage on Dr. Goel's permanent cancellation of his existing policy.[51] Dr. Goel agreed to this condition in his amended response to Question 4(f) on the Provident application. Even if he never intended to cancel his Paul Revere coverage within 30 days of the effective date of the Provident policy, and even if Mr. Sharma knew this, "our concern is not nearly so much what the parties may have intended as it is with what they said, for the words employed are by far the best resource for ascertaining intent and assigning

---

[50] 3 LEE R. RUSS & THOMAS F. SEGALLA, COUCH ON INSURANCE 3D § 49:5, at 49-10 (1995).

[51] *See Gladney*, 895 F.2d at 241.

22

meaning with fairness and accuracy."[52]  Because Dr. Goel promised to cancel his Paul Revere coverage **after** receiving the Provident policy, the equitable doctrines of waiver and estoppel do not permit him to "benefit from his own dereliction."[53]

(4)  *The Incontestability Provision*

Dr. Goel argues that the two-year incontestability provision in the Provident policy prohibits the company from rescinding the policy.  The provision states that "[a]fter two years from the Effective Date of this policy, no misstatements, except fraudulent misstatements, made by you in the application for this policy will be used to void the policy or to deny a claim for loss incurred or disability that starts after the end of such two year period."[54]  The district court found this provision inapplicable:

> This is not a case of a mere misstatement in the application which the law deems waived if not asserted within two years.  Provident seeks rescission because Goel's failure to cancel his Paul Revere coverage constitutes a failure of consideration and/or a breach of an express condition upon which the policy was issued.  It is a breach which goes to the heart of their agreement.  If Goel had not agreed to the amendment, there would have been no meeting of the minds and,

---

[52] *UHS-Qualicare, Inc. v. Gulf Coast Cmty. Hosp., Inc.*, 525 So. 2d 746, 754 (Miss. 1987).

[53] *Gladney*, 895 F.2d at 242.

[54] Mississippi law requires policies issued for delivery in the state to contain this or a similarly worded provision.  *See* MISS. CODE ANN. § 83-9-5(1)(b) (1972).

23

therefore, no agreement.[55]

Dr. Goel contends that the district court erred in failing to view the Amendment as a misstatement. We find, however, that his reliance on the incontestability provision is misplaced. Under Mississippi law, a misstatement or a misrepresentation concerns past or present facts, not promises of future conduct.[56] Only when a promise of future conduct is made with the present intent not to perform can such a promise constitute a misrepresentation.[57] In his amended response to Question 4(f) on his application, Dr. Goel promised to cancel his Paul Revere policy after receiving his new coverage. Because this is a promise of future conduct, it does not qualify as a misstatement under Mississippi law unless it was made with the present intent not to perform. But Dr. Goel asserts that if he signed the Amendment, he did indeed do so with the present intent not to perform. We find this assertion incredible for two reasons. First, it runs headlong into the fraudulent misrepresentation exception to the incontestability provision. Second, in his deposition, Dr. Goel testified that he does not remember signing the Amendment. We therefore cannot take seriously his self-serving characterization of his own mental state at the

---

[55] R. at 622-23.

[56] *Cockerham v. Kerr-McGee Chem. Corp.*, 23 F.3d 101, 104 (5th Cir. 1994).

[57] *Bank of Shaw v. Posey*, 573 So. 2d 1355, 1360 (Miss. 1990).

24

time he engaged in an act for which he has no recollection.

We conclude that Dr. Goel has failed to demonstrate that summary judgment was inappropriate.

## III. RULE 60(B)

### A.   Standard of Review

"The decision to grant or deny 60(b) relief lies in the sound discretion of the district court and will be reversed only for an abuse of that discretion."[58]

### B.   Analysis

The linchpin of Dr. Goel's appeal from the denial of his Rule 60(b) motion is his argument that because the district court did not give reasons for its order,[59] this court should remand the case for further evaluation.   Relying on this court's decision in *Schwarz v. Folloder*,[60] Dr. Goel contends that the district court must give reasons for its decision so that the appellate court can

---

[58] *New Hampshire Ins. Co. v. Martech USA, Inc.*, 993 F.2d 1195, 1200 (5th Cir. 1993) (citing *Brown v. Petrolite Corp.*, 965 F.2d 38 (5th Cir. 1992)).

[59] Although the district court did not provide a statement of reasons as to why it denied relief, it did not blithely dismiss Dr. Goel's motion without consideration.   The district court's order denying the motion states that the court "reviewed and fully considered the briefs of the parties regarding the defendant's motion to be relieved from final judgment in this case" and contains reasons as to why the court considered the motion at all, as it had originally dismissed the motion as moot because Dr. Goel had already filed a notice of appeal.

[60] 767 F.2d 125, 133 (5th Cir. 1985).

exercise "meaningful review." The case on which he relies did not, however, establish the per se rule that Dr. Goel currently advocates. *Schwarz* involved an appeal by a prevailing defendant who sought costs and attorney's fees. The district court denied the defendant's claims "without holding an evidentiary hearing, issuing an opinion, or making any written findings of fact or conclusions of law."[61] Remand was appropriate because it was unclear whether the district court recognized that its dismissal of the plaintiff's suit with prejudice meant that the defendant was a prevailing party--a prerequisite to recovering costs.[62] This court noted that "a dismissal with prejudice is tantamount to a judgment on the merits" and concluded that the defendant, as the clearly prevailing party, should ordinarily have been entitled to costs.[63] This court further noted that in view of the district court's silence, "it [wa]s not even possible to infer from the court's order whether the court erroneously believed that [the defendant] was not a prevailing party, or whether it believed that [the defendant], despite being a prevailing party, was not entitled to costs for other reasons."[64] Finding that the defendant also "made a colorable claim for attorney's fees [by] arguing that the

---

[61] *Id.* at 129.

[62] *Id.* at 130.

[63] *Id.*

[64] *Id.* at 131.

26

appellees knew or should have known of the falsity of essential factual allegations in their complaint," the court concluded that "[w]here a district court fails to explain its decision to deny attorney's fees, we do not know whether the decision was within the bounds of discretion or was based on an erroneous legal theory."[65]

Other circuit courts confronting the failure of a district court to assign reasons for a ruling have refused to find an abuse of discretion where the merits of the appellant's claim can be easily addressed. Thus, the appellant must establish a colorable claim before remand is justified. For example, in *Barnhill v. Doiron*,[66] an appellant argued that the district court's denial of his motion for appointment of counsel without assigning reasons constituted a per se abuse of discretion. The Seventh Circuit rejected the petitioner's per se argument as having "no basis in law" and then evaluated the substance of the petitioner's motion.[67] Because the "legal issues raised by [the petitioner's] complaint [we]re straightforward and readily comprehensible" and "[t]he assistance of counsel would have added little--if indeed anything-- to his understanding of the relevant issues," the court found no abuse of discretion.[68]

---

[65] *Id.* at 133.

[66] 958 F.2d 200 (7th Cir. 1992).

[67] *Id.* at 202.

[68] *Id.* at 203.

Although we agree that district courts should provide statements of reasons for their decisions, as "[a] statement of reasons is one of the handmaidens of judging,"[69] because the legal issues raised by Dr. Goel's appeal of the denial of his Rule 60(b) motion are straightforward and readily comprehensible, we decline to hold that the district court's dismissal of Dr. Goel's motion without the articulation of reasons is a per se abuse of discretion demanding remand, and we undertake a review of the merits of his motion to determine whether he raises a colorable claim.

"[T]he court may relieve a party . . . from a final judgment . . . for . . . newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)."[70] "To succeed on a motion brought under 60(b)(2) based on newly discovered evidence, the movant must demonstrate (1) that it exercised due diligence in obtaining the information and (2) 'the evidence is material and controlling and clearly would have produced a different result if presented before the original judgment.'"[71] "The only issues on an appeal of a Rule 60(b) motion are: the propriety of the denial of relief . . . and whether the court abused its discretion in denying relief."[72]

---

[69] *Schwarz*, 767 F.2d at 133.

[70] FED. R. CIV. P. 60(b)(2).

[71] *Martech*, 993 F.2d at 1200-01 (quoting *Brown*, 965 F.2d at 50).

[72] 12 MOORE ET AL., *supra* note 11, ¶ 60.68[1].

Dr. Goel contends that his Rule 60(b) motion presented substantial new evidence questioning the validity of the signature on the Amendment to his Provident application. In support of his motion, Dr. Goel submitted an affidavit claiming that he could not have signed the Amendment because he was at a conference in San Francisco from June 24, 1994 to June 30, 1994. Dr. Goel stated that he did not raise this claim earlier because he did not remember the San Francisco trip until his daughter reminded him of it in January of 1999. Dr. Goel also submitted the unsworn report of a handwriting specialist that, based on a comparison of the signature on the Amendment with the signatures on several business checks given to him by Dr. Goel, concludes that the evidence, although falling short of a "'virtually certain' degree of confidence," does "point[] rather strongly toward the questioned and known writings not having been written by the same individual."[73]

Dr. Goel has not shown that the evidence in his affidavit and in the handwriting report is newly discovered evidence that by due diligence could not have been discovered in time to move for a new trial. "Unexcused failure to produce the relevant evidence at the original trial can be sufficient without more to warrant denial of

---

[73] R. at 743.

29

a rule 60(b) motion."[74]  Moreover, the failure to remember or discover one's own actions after having forgotten them does not reflect the exercise of due diligence.  After all, "[w]ere the belated recalling of facts that were once well known and since forgotten to qualify as 'newly discovered,' the teeth of the rule would be substantially blunted."[75]  The key to Dr. Goel's motion is his contention that his signature on the Amendment was forged.  But Dr. Goel had access to the copy of the signed Amendment long before summary judgment was entered against him, and the importance of the Amendment to the outcome of this case was evident from the beginning.  Thus, Dr. Goel's failure both to inquire into his own whereabouts during the last week of June 1994 and to consult with a handwriting expert prior to summary judgment falls short of the

---

[74] *Kentucky Fried Chicken Corp. v. Diversified Packaging Corp.*, 549 F.2d 368, 391 (5th Cir. 1977) (citing *AG Pro, Inc. v. Sakraida*, 512 F.2d 141, 143-44 (5th Cir. 1975), *rev'd on other grounds*, 425 U.S. 273 (1976)).  *See also Longden v. Sunderman*, 797 F.2d 1095, 1103 (5th Cir. 1992).

[75] *In re United States*, 565 F.2d 173, 176 (1st Cir. 1977). Although the court in *In re United States* concluded that the defendant in a criminal case could not, after a verdict, obtain a new trial under FED. R. CRIM. P. 33 by introducing a document he had signed four years earlier, we find the reasoning of the First Circuit persuasive in this case, a civil challenge to the court's judgment under Rule 60(b).  *See also United States v. Douglas*, 874 F.2d 1145, 1163 n.32 (7th Cir. 1989) (noting that the defendant's attempt, after trial, to characterize subsequently released government reports "detailing his role as a[] [police] informant as 'newly discovered' is somewhat disingenuous, [as] . . . [a]n individual is expected to remember his own actions . . ."), *overruled on other grounds*, *United States v. Durrive*, 902 F.2d 1221, 1225 (7th Cir. 1990).

requirements of due diligence.

Additionally, commentators have described as "self-evident" the requirements that newly discovered evidence be "both admissible and credible," as "[t]here is no reason to set aside a judgment on the basis of evidence that could not be admitted at a new trial or, if admitted, would be unconvincing."[76] The handwriting report submitted with Dr. Goel's Rule 60(b) motion would not be properly considered in evaluating the motion for summary judgment, as the report concerning the authenticity of Dr. Goel's signature on the Amendment is unsworn. "Unsworn expert reports . . . do not qualify as affidavits or otherwise admissible evidence for [the] purpose of Rule 56, and may be disregarded by the court when ruling on a motion for summary judgment."[77] As for Dr. Goel's affidavit, his contention that he was out of town on June 26, 1994 is unavailing as Provident does not dispute that the Amendment bears an incorrect date. It is hornbook law that "[t]he fact that a written contract is undated or even misdated does not necessarily affect its

---

[76] 12 MOORE ET AL., *supra* note 11, ¶ 60.42[6].

[77] 11 MOORE ET AL., *supra* note 11, ¶ 56.14[2][c]. *Cf. Nissho-Iwai*, 845 F.2d at 1306 ("It is a settled rule in this circuit that an unsworn affidavit is incompetent to raise a fact issue precluding summary judgment."). *See also Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 191 (5th Cir.1991) (expert letter not considered for summary judgment purposes where it is unsworn and fails to indicate expert's qualifications).

validity."[78]  The following is the only statement in Dr. Goel's affidavit that could have possibly precluded summary judgment: "I now firmly believe that I did not sign the amendment.  I know that I did not back-date the amendment as Provident accuses."  This assertion, however, is also of questionable admissibility, as "[a] statement that an affidavit is based on the affiant's personal belief does not automatically satisfy the requirement [of Rule 56(e)] that the affidavit be based on personal knowledge."[79]  But given the failure to establish due diligence in discovering this evidence, further consideration of this question is not required.

Finally, even if we were to conclude that Dr. Goel's evidence satisfies the due diligence and admissibility requirements, we express doubt as to whether the evidence is "material and controlling and clearly would have produced a different result if presented before the original judgment."[80]  Because Dr. Goel, unlike the petitioners in *Schwarz*, has made no "colorable claim" for

---

[78] 17 C.J.S. *Contracts* § 74 (1999).  "So, as between the parties, it is usually immaterial that the contract is not executed on the day of its date. . . ."  *Id.* (citing *Thornton Bros., Inc. v. Gore*, 172 So. 2d 425 (Miss. 1965)).

[79] 11 MOORE ET AL., *supra* note 11, ¶ 56.14[1][c].  *See also Jameson v. Jameson*, 176 F.2d 58, 60 (D.C. Cir. 1949) ("Belief, no matter how sincere, is not equivalent to knowledge."); 10B WRIGHT ET AL., *supra* note 35, § 2738, at 346-56 ("[U]ltimate or conclusory facts and conclusions of law, as well as statements made on belief or 'on information and belief,' cannot be utilized on a summary-judgment motion.").

[80] *Martech*, 993 F.2d at 1201.

relief under Rule 60(b), we decline to find that the district court abused its discretion and we affirm the district court's ruling on this issue.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment to Provident and its denial of Dr. Goel's Rule 60(b) motion.

AFFIRMED.