# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2019-IA-00252-SCT

*MUTUAL OF OMAHA INSURANCE COMPANY*

*v.*

*THERESA DRISKELL*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/14/2019 |
| TRIAL JUDGE: | HON. EDDIE H. BOWEN |
| TRIAL COURT ATTORNEYS: | EUGENE COURSEY TULLOS |
| | JASON RICHARD BUSH |
| | STEVEN JOEL JOHNSON |
| | JOHN RAYMOND TULLOS |
| COURT FROM WHICH APPEALED: | SMITH COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JASON RICHARD BUSH |
| ATTORNEYS FOR APPELLEE: | JOHN RAYMOND TULLOS |
| | RAYMOND PATRICK TULLOS |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | REVERSED AND RENDERED - 04/02/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE RANDOLPH, C.J., MAXWELL AND BEAM, JJ.**

**MAXWELL, JUSTICE, FOR THE COURT:**

¶1. In Mississippi, when an insurance company "tenders a policy at variance with the application, the tender constitutes a counteroffer."[1] At that point, the applicant "must accept or reject the policy issued according to the terms of the insurer."[2] If the applicant accepts a

---

[1] *Interstate Life & Accident Ins. Co. v. Flanagan*, 284 So. 2d 33, 36 (Miss. 1973) (internal quotation marks omitted) (quoting 43 Am. Jur. 2d *Insurance* § 211 (1969)).

[2] *Id.*

policy that varied from her application, "the varied policy becomes a contract between the parties."[3]

¶2.    Here, Theresa Driskell, with the help of an insurance agent, submitted applications for a life insurance policy and a disability income rider. When reviewing the application, the insurance company discovered Driskell was ineligible for the disability income rider. So it issued her a life insurance policy that varied from her application—a policy that did not provide disability income. Driskell received this policy and reviewed it. She did not reject or return it. Instead, she accepted the policy and began making premium payments.

¶3.    Nearly three years later, Driskell made a claim with the insurer for disability income. Because the policy did not include a disability income rider, the insurer denied her claim. Driskell sued the insurer, citing her expectation of disability income coverage. The insurer moved for summary judgment, which the trial judge denied. This Court granted the insurer's interlocutory appeal to decide if summary judgment was wrongly denied. After review, it is clear the policy issued to Driskell and accepted by her did not include a disability income rider. Therefore, we reverse the denial of summary judgment and render a judgment in the insurer's favor.

**Background Facts and Procedural History**

¶4.    In May 2011, Theresa Driskell applied for a life insurance policy from United of

_____

[3] *Id.* (internal quotation marks omitted) (quoting 43 Am. Jur. 2d *Insurance* § 211 (1969)).

Omaha Life Insurance Company (United).[4] In addition to her primary application, Driskell also submitted a supplemental application for a disability benefits rider. United's disability benefits are provided either as income for a set number of months and/or a waiver of life insurance premiums. Driskell applied for thirty months of disability income. United approved her application and issued her a life insurance policy. But it did not approve her for monthly disability income. Instead, the disability rider to Driskell's life insurance policy waived further premium payments in the event she became disabled.

¶5. During the underwriting process, a pharmaceutical report showed Driskell had been prescribed medicine for neuropathy. On her supplemental application, Driskell marked that she had never been diagnosed with or treated for a nervous system disorder. This was false. And, as the supplemental application states, an applicant who has been treated or diagnosed for a nervous system disorder, such as neuropathy, is ineligible for monthly disability income.

¶6. United delivered Driskell's insurance policy to her agent, Andrea Garretson, on July 2, 2011. Garretson noted the policy did not provide disability income. So she emailed United that same day asking to make changes to Driskell's insurance policy and to add a disability income rider. Four days later, an underwriter for United responded to Garretson. He informed her that Driskell's policy could be changed but, based on her pharmaceutical report, she was ineligible for a disability income rider. Garretson never replied and no changes were made to Driskell's policy. The policy was issued without a disability income

---

[4] Although Driskell named Mutual of Omaha Insurance Company in her complaint, United of Omaha Life Insurance Company actually issued the life insurance policy. United is a subsidiary of Mutual of Omaha.

3

rider.

¶7.    United had also mailed Driskell a copy of her policy, which she received in early June 2011.  Driskell looked over the policy but claimed she did not read it completely.  She did, however, review the policy coverage limit—$50,000—and the premiums United was charging, a premium for the life insurance policy and a premium for a disability benefits rider.  The disability benefits rider waived future premium payments if she became disabled.  But it did not provide monthly income.  Driskell made no attempt to reject the policy or return it to United.

¶8.    On March 14, 2014, Driskell claimed she had become disabled.  She then filed a claim for monthly disability income.  Because her policy did not include monthly disability income, nor had Driskell paid any premiums for such benefits, United denied her claim.  On October 27, 2015, Driskell filed a complaint against United in Smith County Circuit Court. She alleged United wrongly denied her benefits to which she was entitled.  United responded to the complaint and also moved to file a third-party complaint against Garretson, seeking indemnification, which the trial court granted.  In her answer, Garretson admitted she asked United about changing Driskell's policy and adding a monthly disability income rider. Garretson also admitted United had informed her that while Driskell's policy could be changed, Driskell was not eligible for a disability income rider.  But Garretson never conveyed this information to Driskell.  Driskell insists that when she received her policy in the mail, she assumed that because she applied for monthly disability income, United had approved her application.  But she admitted she could not find these benefits in her policy.

4

¶9.    United moved for summary judgment, arguing Driskell never sought to return the issued policy, which did not provide disability income benefits. It also pointed out Driskell had never paid premiums for disability income benefits. Still, the trial judge denied United's motion. He found that whether Driskell's policy included disability income benefits was a question of fact for the jury to decide. United petitioned for an interlocutory appeal, which this Court granted.

## Discussion

¶10.   This Court reviews de novo the grant or denial of summary judgment. *Mladineo v. Schmidt*, 52 So. 3d 1154, 1160 (Miss. 2010). "[I]f the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact . . . the moving party is entitled to a judgment as a matter of law." Miss. R. Civ. P. 56(c). Evidence is viewed in the light most favorable to the nonmoving party, and the movant bears the burden to show no genuine issue of material fact exists. *Mladineo*, 52 So. 3d at 1160.

¶11.   Driskell argues that because she applied for a disability income rider and was assisted by Garretson, she reasonably expected to receive monthly disability income benefits. And because United's letter that accompanied her policy did not communicate the policy was a counteroffer, she reasonably expected her rider application had been approved.

¶12.   "The interpretation of an insurance policy is a question of law, not one of fact." *Noxubee Cty. Sch. Dist. v. United Nat'l Ins. Co.*, 883 So. 2d 1159, 1165 (Miss. 2004) (citing *Lewis v. Allstate Ins. Co.*, 730 So. 2d 65, 68 (Miss. 1998)). "[W]hen the words of an

insurance policy are plain and unambiguous, the court will afford them their plain, ordinary meaning and will apply them as written." *Id.* (citing *Paul Revere Life Ins. Co. v. Prince*, 375 So. 2d 417, 418 (Miss. 1979)). A "policy either affords coverage or not, based upon the application of the policy language to the facts presented." *Architex Ass'n Inc. v. Scottsdale Ins. Co.*, 27 So. 3d 1148, 1156 (Miss. 2010) (citing *Corban v. United Servs. Auto. Ass'n*, 20 So. 3d 601, 609 (Miss. 2009)).

¶13. First, Driskell's life insurance policy does not provide monthly disability income benefits. That coverage does not exist. Still, she argues United should provide the coverage she hoped to have. But an insured has an affirmative duty to read an insurance policy. *Mladineo*, 52 So. 3d at 1161 (citing *Atlas Roofing Mfg. Co., Inc. v. Robinson & Julienne, Inc.*, 279 So. 2d 625, 629 (Miss. 1973)). And "knowledge of an insurance policy is imputed to an insured regardless of whether the insured read the policy." *Id.* (internal quotation marks omitted) (quoting *Oaks v. Sellers*, 953 So. 2d 1077, 1083-84 (Miss. 2007)). It is undisputed that United delivered a policy to Driskell that had a premium waiver rider instead of a disability income rider.

¶14. Second, an application for insurance is not a contract but rather an offer to contract. *Interstate Life & Accident Ins. Co. v. Flanagan*, 284 So. 2d 33, 36-37 (Miss. 1973); *see also Provident Life & Accident Inc. Co. v. Goel*, 274 F.3d 984, 992 (5th Cir. 2001); *Smith v. Med. Life Ins. Co.*, 910 So. 2d 48, 51 (Miss. Ct. App. 2005). An insurer may accept or reject the application or may state the terms on which it will offer insurance. *Id.* When an insurer issues a policy that varies from the application, it is a counteroffer, which the applicant may

6

either accept or reject. *Id.* United sent Driskell a policy without the requested disability income rider. Driskell had the policy in her possession and the affirmative duty to read it. She did not reject or return the policy. Instead, she began making premium payments and continued payments for almost three years. So Driskell accepted United's counteroffer.

¶15. Finally, this Court has consistently held that insureds who possess a policy that contradicts an agent's representations cannot rely on the agent's representations to create coverage when none exists. *Hayne v. The Doctors Co.*, 145 So. 3d 1175, 1183 (Miss. 2014); *Mladineo*, 52 So. 3d at 1167. And parol evidence, like prior oral agreements, is inadmissible and does not change the terms of a written contract. *Hayne*, 145 So. 3d at 1183. Even assuming Garretson misrepresented that Driskell's policy would include a disability income rider, Driskell is bound by the actual policy she entered into—a policy that does not include a disability income rider.

**Conclusion**

¶16. Because the policy Driskell accepted provides no monthly disability income benefits, none exist. Therefore, United was entitled to a judgment as a matter of law.

¶17. **REVERSED AND RENDERED.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., COLEMAN, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR.**