# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
April 14, 2011

No. 07-20939

Lyle W. Cayce
Clerk

DOMINIC COTRONEO; ARTHUR ANILLO; ALAN DANFORD; JACK
BRODAY; VANESSA DOUGHERTY; TANYA FRENCH; JOSEPH GARCIA;
DUANE GILLS; ALEX L. LUNA; JOHN MCBRYDE; AARON MERKEL;
STEVEN NORRIS; TIM PETRIE; ANGELIA RENEE TOOLE; DUSTIN
GILLS; MICHAEL WRIGHT,

Plaintiffs-Appellees, Cross-Appellants,

v.

SHAW ENVIRONMENT & INFRASTRUCTURE, INC.; GERALD J. JOY;
BARBARA REIDER; PETER CHIN; BUTCH DANIELS; JOHN MCGOWAN;
SERAFIN C. MUNOZ, Jr; RENEE GARO; DAVID DUNCAN; JAMES
LANGSTED; SHAW ENVIRONMENTAL, INC,

Defendants-Appellants, Cross-Appellees.

Appeals from the United States District Court
for the Southern District of Texas

Before KING, DENNIS, and ELROD, Circuit Judges.

DENNIS, Circuit Judge:

The plaintiffs in this case, workers who were employed in cleaning up
radioactive materials, alleged that they were harmed by excessive exposure to
radiation at a Texas work site and brought a tort claim suit in a New York state
court against their employer and supervisors under the Price-Anderson Act, 42
U.S.C. § 2011 *et seq.* ("the PAA"), and Texas state law.  Under the explicit

No. 07-20939

removal provision of the PAA, 42 U.S.C. § 2210 (n)(2), the defendants removed this case to the United States District for the Southern District of Texas, where the alleged injuries occurred. That district court granted the defendants' motion for summary judgment as to the plaintiffs' claims that were predicated on bodily injuries and illnesses, holding that the plaintiffs had failed to show a genuine issue of material fact as to whether their physical harms had been caused by overexposure to radiation. At the same time, the district court denied the defendants' motion for summary judgment with respect to the plaintiffs' claims for damages based on "offensive contact" battery by radiation. The district court held that, whereas the bodily injury and illness claims arose under federal law by operation of the PAA, 42 U.S.C. § 2014(hh), the plaintiffs' "offensive contact" claims arose solely under Texas law. The district court declined to exercise supplemental jurisdiction over what it saw as purely state-law claims and dismissed them without prejudice.

This panel unanimously affirms the district court's summary judgment dismissing the plaintiffs' physical injury and illness claims. But we unanimously conclude that the district court erred in treating the plaintiffs' "offensive contact"claims as if they arose solely under Texas law. Although all of the plaintiffs' claims are derived from Texas law, they are deemed to arise under federal law by the PAA, because they are part of a "suit asserting public liability" as defined by the PAA. *See id.* This panel is divided, however, upon what further action the district court must take in respect to the "offensive contact" battery claims. A majority of the panel, Judges KING and ELROD, concludes that the "offensive contact" claims fail under the PAA and must be dismissed with prejudice because the plaintiffs have not shown that these claims

2

No. 07-20939

arose from a nuclear incident, and therefore cannot establish public liability.  In a separate dissenting opinion, *infra* at 22-36, I explain why I disagree with that result and would remand the plaintiffs' "offensive contact" battery claims to the district court for further adjudication.

**I.**

Pursuant to a government contract, Shaw Environmental, Inc. cleaned up radioactive material at a former nuclear source fabrication facility in Webster, Texas.  The plaintiffs, who were employed by Shaw's subcontractors at the Texas work site for the project, contend that Shaw and its supervisors exposed them to excessive levels of radiation during their employment.  Such exposure, especially to americium-241 and cesium-137, allegedly caused them to suffer certain bodily injuries and illnesses.[1]  According to the plaintiffs, defendants failed to take appropriate precautions that could have prevented this excessive exposure.  They claim, for instance, that "inappropriate radiation waste bags were purchased from the Dollar Store to save money."

They sued the defendants in a New York state court, asserting Texas state-law claims for negligence, gross negligence, negligence per se, and assault and battery.  The plaintiffs' complaint alleges not only that the defendants' intentional or negligent conduct caused their bodily injuries and illnesses (bodily injury claims), but also that the defendants intentionally or knowingly caused

---

[1] The plaintiffs allege the following illnesses and injuries: "throat irritation, dizziness/vertigo, liver ammonia, skin infection/rashes/exposure, high blood pressure, hair loss, enlarged prostate, ear infections, sinus infections/problems, gallstones, polyps in throat, nodules on vocal cords, aggravated allergies/asthma, joint or bone pain/problems, vomiting, dehydration, teeth problems, lumps/cysts, depression, irregular menstrual cycles, rectal bleeding, infertility, anemia, heart palpitations/chest pains, blood in urine, kidney stones, bloody noses, stress/anxiety attacks, extreme fatigue, numbness, mole discoloration, sleeping difficulties, and headaches."

No. 07-20939

excessive amounts of radiation to make offensive physical contact with them ("offensive contact" claims).  The "offensive contact" claims are battery claims, which do not require a showing of physical injury.

It is undisputed that the plaintiffs' bodily injury claims are deemed to arise under federal law by virtue of the PAA, 42 U.S.C. § 2014(hh).  Pursuant to the PAA's venue and removal provision, 42 U.S.C. § 2210(n)(2), the defendants removed this action to the United States District Court for the Southern District of Texas, the district where the incidents giving rise to the complaint occurred. The parties proceeded with discovery, and on the plaintiffs' motion, the district court admitted two expert reports by Dr. Marvin Resnikoff.  These reports opined that the plaintiffs' injuries could have been caused by their workplace exposure to radiation.  The district court also admitted the report of the defendants' expert, Dr. Robert E. Jackson, to the contrary.  After the deadline for expert discovery, the plaintiffs attempted to designate a previously undisclosed expert, Dr. Kalpana Patel, but the district court excluded Dr. Patel as a witness and her affidavit as untimely.

Following discovery, the defendants moved for summary judgment, arguing that the plaintiffs had not provided legally sufficient evidence to create a factual issue as to whether their physical injuries or illnesses had been caused by their exposure to radiation at the cleanup site.  The defendants also argued that the "offensive contact" claims were legally excluded by the PAA and therefore were extinguished and not actionable.  The district court held that the plaintiffs had failed to show a genuine issue of material fact as to whether their physical harms had been caused by overexposure to radiation, and accordingly granted the defendants' summary judgment motion in part.

4

No. 07-20939

As to the plaintiffs' "offensive contact" claims, however, the district court determined that the defendants were not entitled to summary judgment. The district court held that these claims were not deemed to arise under the PAA by operation of 42 U.S.C. § 2014(hh) and were therefore purely state-law claims. The district court reasoned that federal causes of action under the PAA are available only for suits asserting liability arising out of "nuclear incident[s]," which are defined as occurrences causing "bodily injury, sickness, disease, or death," *id.* § 2014(q); and that because the "offensive contact" claims did not arise out of a "nuclear incident," they fell outside the PAA's scope. Furthermore, the district court declined to exercise supplemental jurisdiction over the "offensive contact" claims, which it observed "present novel legal issues not previously addressed by the Texas Supreme Court." Accordingly, the district court dismissed the "offensive contact" claims without prejudice, allowing the plaintiffs to refile them in state court.

This appeal followed. The defendants argue that the plaintiffs' "offensive contact" claims should have been dismissed on the merits because they are barred by the PAA. The plaintiffs cross-appeal, challenging the summary judgment dismissing their bodily injury and illness claims.

## II.

We review a district court's summary judgment *de novo*, "guided by the same standard as the district court: Federal Rule of Civil Procedure 56." *In re Segerstrom*, 247 F.3d 218, 223 (5th Cir. 2001). Summary judgment is appropriate when "there is 'no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Kovacic v. Villarreal*, 628 F.3d 209, 211 (5th Cir. 2010) (quoting Fed. R. Civ. P. 56(a)). "The party moving

5

No. 07-20939

for summary judgment must establish that there are no genuine issues of material fact. 'Once the moving party makes that showing, however, the burden shifts to the nonmoving party to show that summary judgment is not appropriate.'" *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001) (quoting *Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991)). "Thus, to defeat a motion for summary judgment, the nonmoving party must 'go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (internal quotation mark omitted).

The PAA, as amended in 1988, establishes a federal cause of action known as a "public liability action" for tort claims arising out of incidents involving radioactive materials. This cause of action "is built around preexisting state law, [but] contains some distinctively federal elements as well." *O'Conner v. Commonwealth Edison Co.*, 13 F.3d 1090, 1096 (7th Cir. 1994).[2] "In explicitly providing that the 'substantive rules for decision' in public liability actions 'shall be derived from' the law of the state in which the nuclear incident occurred, . . . Congress expressed its intention that state law provides the content of and

---

[2] The Act "dictates the limitations period for a public liability cause of action, 42 U.S.C. § 2210(n)(1), provides for venue, § 2210(n)(2), limits the availability of punitive damages in an action arising out of [a nuclear incident], § 2210(s), and mandates that normally-available defenses be waived in the cases of [extraordinary nuclear occurrences], § 2210(n)(1). The . . . Act, therefore, forms the state-based cause of action into the federal mold." *O'Conner*, 13 F.3d at 1096.

operates as federal law." *In re TMI Litig. Cases Consol. II*, 940 F.2d 832, 855 (3d Cir. 1991) (quoting 42 U.S.C. § 2014(hh)). "Thus, a state cause of action is not merely transferred to federal court; instead, a new federal cause of action supplants the prior state cause of action." *O'Conner*, 13 F.3d at 1099-1100. "Congress clearly intended to supplant all possible state causes of action when the factual prerequisite[s] of the statute are met." *In re TMI*, 940 F.2d at 857. "Congress desired that state law provide the content for and operate as federal law . . . in the context of a complex federal scheme which would mold and shape any cause of action grounded in state law." *O'Conner*, 13 F.3d at 1100.

In short, a plaintiff who asserts any claim arising out of a "nuclear incident" as defined in the PAA, 42 U.S.C. § 2014(q), "can sue under the [PAA] or not at all." *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1553 (6th Cir. 1997). "His federal claim will be derived from state law," *id.*, "unless such law is inconsistent with the provisions of [§ 2210]," 42 U.S.C. § 2014(hh).

Because the parties agree that the plaintiffs' bodily injury claims arise under the PAA, we first address the district court's summary judgment on those claims, before resolving the dispute regarding the proper disposition of the "offensive contact" claims.

## A.[3]

On cross-appeal, the plaintiffs argue that the district court erred in dismissing their bodily injury claims for failure to provide evidence that excessive radiation exposure at the cleanup site caused the plaintiffs' injuries. Our review of the record confirms that the district court properly entered

---

[3] Judge Dennis concurs in affirming the district court's summary judgment dismissing the plaintiffs' bodily injury and illness claims but disagrees in part with the majority's reasoning in part II(A) of this opinion, as set forth in footnote 1 of his partial dissent.

No. 07-20939

summary judgment for the defendants on these claims. The plaintiffs' evidence was insufficient to raise a genuine issue of fact as to whether there was a causal connection between the radiation exposure and the plaintiffs' claimed injuries.

The plaintiffs attempted to use epidemiological studies to establish that their overexposure to radiation caused their physical harms. The Texas Supreme Court has held that epidemiological studies can be used "to raise a fact issue on causation" only if three conditions are met: (1) the studies are scientifically reliable and show a "substantially elevated risk," (2) the claimant is "similar to those in the studies," and (3) "if there are other plausible causes of the injury or condition that could be negated, the plaintiff must *offer evidence excluding those causes with reasonable certainty*." *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 720 (Tex. 1997) (emphasis added).

We need not address the first two *Havner* conditions because we agree with the district court that the plaintiffs have failed to satisfy the third: they have not offered evidence excluding other plausible causes of their injuries with reasonable certainty. The defendants' expert, Dr. Jackson, offered numerous plausible causes, other than radiation exposure, for the plaintiffs' alleged injuries. The plaintiffs' expert, Dr. Resnikoff, offered no deposition testimony or evidence excluding with reasonable certainty Dr. Jackson's proposed alternative causes; to the contrary, Dr. Resnikoff acknowledged that the plaintiffs' injuries might have been caused by factors other than their exposure to radiation. Similarly, Dr. Patel's affidavit made no effort to exclude other possible causes of the plaintiffs' injuries. Indeed, her affidavit did not dispute Dr. Jackson's assertion: "[I]t is true, as described in Dr. Jackson's Report, that all of the disorders and conditions being experienced by the Plaintiffs could come from

8

other causes." Although Dr. Patel's affidavit countered that "these disorders and conditions can *also* be caused by radiation exposure," it did nothing to exclude Dr. Jackson's suggested alternative causes with reasonable certainty. *See E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 559 (Tex. 1995) (holding that an expert's "failure to rule out other causes of the damage renders his opinion little more than speculation"); *Mobil Oil Corp. v. Bailey*, 187 S.W.3d 265, 274-75 (Tex. App.—Beaumont 2006, pet. denied) (holding, under *Havner*, that the plaintiffs did not offer sufficient evidence that asbestos exposure caused the decedent's lung cancer because the plaintiffs' experts did not exclude other plausible causes, such as smoking, with reasonable certainty)*; Exxon Corp. v. Makofski*, 116 S.W.3d 176, 188-89 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (holding that under *Havner*, that the plaintiffs did not offer sufficient evidence that benzene caused the decedent's anemia because their expert did not exclude other plausible alternative causes, such as iron deficiency, with reasonable certainty).  Thus, even taking into account Dr. Patel's affidavit, the plaintiffs have failed to satisfy their burden of excluding other plausible causes of their injuries with reasonable certainty.[4]  Accordingly, we affirm the summary judgment as to the plaintiffs' bodily injury claims.

## B.[5]

We now consider the plaintiffs' "offensive contact" claims.  In order to determine whether these claims arise under the PAA, we must examine the

---

[4] The district court excluded Dr. Patel as an expert and Dr. Patel's affidavit as untimely, a ruling which the plaintiffs now appeal.  We need not address the issue, however, in light of our conclusion that summary judgment was appropriate, even considering Dr. Patel's affidavit.

[5] Judge Dennis joins fully in this part of this opinion.

precise language of the PAA, and especially § 2014(hh), which defines the term "public liability action" and identifies the legal rules that govern such actions. "'The objective of a court called upon to interpret a statute is to ascertain congressional intent and give effect to legislative will.' The clearest indication of congressional intent is the words of the statute itself. When the language of a statute is unambiguous we must follow its plain meaning." *Davis v. Johnson*, 158 F.3d 806, 810 (5th Cir.1998) (citations omitted) (quoting *Johnson v. Am. Airlines, Inc.*, 745 F.2d 988, 992 (5th Cir. 1984)).

The statute employs a chain of definitions to define the scope of a "public liability action." A "public liability action" means a "suit asserting public liability." 42 U.S.C. § 2014(hh). "Public liability" means "any legal liability arising out of or resulting from a nuclear incident."[6] *Id.* § 2014(w). A "nuclear incident" involves "bodily injury, sickness, disease, or death, or loss of or damage to property, or loss of use of property" caused by the "radioactive, toxic, explosive, or other hazardous properties of source, special nuclear, or byproduct material."[7] *Id.* § 2014(q). To summarize, a "public liability action" is a suit in which a party asserts that another party bears any legal liability arising out of an incident in which the hazardous properties of radioactive material caused bodily injury, sickness, or property damage.

---

[6] The definition provides for three exceptions, not relevant to this case. In addition, the definition includes liability arising from a "precautionary evacuation," not relevant here because the plaintiffs do not claim to have been involved in such an evacuation.

[7] The definition of "source, special nuclear, or byproduct material" is not at issue in this appeal. It is undisputed for present purposes that the plaintiffs were exposed to some radioactive waste that is encompassed by one or more of these terms. *See* 42 U.S.C. § 2014(e) (defining "byproduct material"); *id.* § 2014(z) (defining "source material"); *id.* § 2014(aa) (defining "special nuclear material").

No. 07-20939

This suit is a "public liability action" as defined by the PAA, because the plaintiffs allege that they suffered injuries and illnesses due to their exposure to radiation, and because they assert that the defendants bear legal liability arising out of these incidents of exposure to radiation.[8]  Since it is a "public liability action," it is to be treated as arising under federal law: "A public liability action shall be deemed to be an action arising under section 2210 of this title . . . ."  42 U.S.C. § 2014(hh).

Therefore, the district court erred by holding that the plaintiffs' "offensive contact" claims did not arise under federal law.  Those claims are part of this suit, which is a "public liability action."  The PAA, in section 2014(hh), provides that the entire suit, not just particular claims that are part of the suit, "shall be deemed to be an action arising under section 2210."  Therefore, the "offensive contact" claims, along with the plaintiffs' other claims, must be treated as arising under federal law.  The fact that the plaintiffs have failed to produce sufficient evidence to survive summary judgment as to whether their injuries and illnesses were actually caused by their overexposure to radiation does not change this result.  It nonetheless remains true that this action is a "suit *asserting* public liability."  *Id*. § 2014(hh) (emphasis added).  As such, it is a "public liability action" and therefore the entire suit is deemed to be an action arising under federal law.

Because this entire suit—the bodily injury claims as well as the "offensive contact" claims—arises under federal law, the district court's disposition of the "offensive contact" claims was erroneous.  The district court believed the claims

---

[8]  Under the circumstances, we need not decide whether the plaintiffs could have avoided this result through artful pleading.

No. 07-20939

arose exclusively under state law, declined to exercise supplemental jurisdiction over them, and thus dismissed the claims without prejudice. *See* 28 U.S.C. § 1367(c). Given that the claims actually arise under federal law by operation of the PAA, however, the district court had original, rather than supplemental, jurisdiction over them. As such, the district court could not decline to exercise that jurisdiction. *See New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans*, 491 U.S. 350, 358-59 (1989).

## C.[9]

Having established that the plaintiffs' "offensive contact" claims arise under federal law because they are part of a "public liability action," this court must consider whether such claims are compensable under the PAA. Section 2014(hh) provides that "[a] public liability action shall be deemed to be an action arising under section 2210 of this title, and the substantive rules for decision in such action shall be derived from the law of the State in which the nuclear incident involved occurs, unless such law is inconsistent with the provisions of such section." Thus, the claims in this case, including the "offensive contact" claims, are governed by substantive rules derived from Texas law unless that law is inconsistent with 42 U.S.C. § 2210. *See O'Conner*, 13 F.3d at 1100-01 ("[T]he court will have to assess whether the applicable state law is consistent with federal law."); *cf. Nieman*, 108 F.3d at 1560, 1562 (considering, but not resolving, the issue of "whether a claim for continuing trespass, as defined by Ohio law, is inconsistent with the Price-Anderson Act," specifically § 2210(n)(1)).

---

[9] Section II.C of this opinion and the result as to the "offensive contact" claims represent the views of the panel majority, Judge King and Judge Elrod. Judge Dennis disagrees with Section II.C and sets forth his reasons in a separate opinion dissenting in part.

12

No. 07-20939

An "offensive contact" claim is a type of battery claim under Texas law. "[R]ather than physical injury, offensive contact is the gravamen of the action; consequently, the defendant is liable not only for contacts which cause actual physical harm, but also for those which are offensive and provocative." *Foye v. Montes*, 9 S.W.3d 436, 441 (Tex. App.—Houston [14th Dist.] 1999, pet. denied); s*ee also Price v. Short*, 931 S.W.2d 677, 687 (Tex. App.—Dallas 1996, no pet.) ("Battery requires only an offensive touching . . . ."). Thus, an "offensive contact" claim does not require a plaintiff to prove that the battery caused any physical injury. *Foye*, 9 S.W.3d at 441. The parties dispute whether a defendant's intentional overexposure of a plaintiff to radiation can be actionable as an "offensive contact" battery under Texas law. We need not resolve this dispute, however, because we conclude that, even if it is actionable under state law, in this case such a cause of action would be inconsistent with section 2210 because it would allow plaintiffs to recover on their public liability action without establishing "public liability."

As discussed above, a public liability action means a "suit asserting public liability." 42 U.S.C. § 2014(hh). Although "asserting" that a nuclear incident occurred is sufficient to make the suit a public liability action, *id.* § 2014(hh), proof of a nuclear incident is required to actually establish "public liability": "legal liability arising out of or resulting from a nuclear incident . . . ." *Id.* § 2014(w). Public liability—the only type of legal liability contemplated by a public liability action—thus presupposes the occurrence of a nuclear incident. Therefore, if the plaintiff cannot show that a nuclear incident occurred, there can

13

be no public liability, and hence no recovery on his public liability action.[10] *See Cook v. Rockwell Int'l Corp.*, 618 F.3d 1127, 1139 (10th Cir. 2010) ("[T]he occurrence of a nuclear incident, and thus a sufficient injury under § 2014(q), constitutes a threshold element of any PAA claim."). This result is perfectly logical: the success or failure of a plaintiff's public liability action depends upon whether the plaintiff can prove what he asserts—public liability.

Moreover, examination of section 2210 confirms this straightforward reading of the statute. Section 2210, which is titled "Indemnification and limitation of liability," contains numerous provisions concerning financial arrangements between the federal government and the nuclear energy industry for the overall purpose of protecting the industry against potentially vast liability that might arise out of a nuclear disaster. *See Corcoran v. N.Y. Power Auth.*, 202 F.3d 530, 539 (2d Cir. 1999) ("Congress enacted Price-Anderson to: (1) ensure that adequate funds would be available to satisfy liability claims in the event of a nuclear accident; and (2) encourage private sector participation in the atomic energy industry by reducing the threat of potentially enormous liability arising out of the operation of an atomic energy plant."). Among other things, section 2210 deals with insurance premiums, indemnification, limitation of liability, and procedures for Congress and the executive and judicial branches to follow when damages from a nuclear incident exceed the PAA's liability limits.

---

[10] The dissent argues that if Congress intended to limit recovery in this way, it could have said so explicitly, pointing to the fact that three specific categories of claims are explicitly excluded from the definition of "public liability." Congress had no need to expressly exclude claims not arising out of a nuclear incident, however, because those claims were never included in the definition in the first place. "Public liability," by it own terms, is limited to "legal liability arising out of or resulting from a nuclear incident . . . ." 42 U.S.C § 2014(w). As such, adding an exclusion for claims not arising out of a nuclear incident would be redundant.

No. 07-20939

Allowing recovery in the absence of a nuclear incident would be inconsistent with almost all of these provisions. Far from placing an "overlay of federal law" upon state law remedies, *In re TMI*, 940 F.2d at 858, it would permit an end-run around the entire PAA scheme.

Crucially, the majority of the provisions in section 2210 deal with "public liability" and thus presume the occurrence of a nuclear incident. The provisions which limit liability, for example, speak of the "aggregate *public liability* for a single *nuclear incident* . . . ." *Id.* § 2210(e)(1) (emphasis added); *see also id.* § 2210(r) (limitation on liability of lessors applies only to "liability arising out of or resulting from a *nuclear incident*" (emphasis added)). The same is true of the provisions which provide for compensation plans where these public liability limits are exceeded. *See id.* § 2210(i). Similarly, other provisions require nuclear licensees to obtain adequate insurance to provide "financial protection," *id.* § 2210(a)-(b), which is defined as "the ability to respond in damages for *public liability*." *Id.* § 2014(k) (emphasis added). Likewise, the indemnification provisions apply to "*public liability* arising from *nuclear incidents*." *Id.* § 2210(c)-(d) (emphasis added). And punitive damage awards are prohibited "with respect to a *nuclear incident* . . . against a person on behalf of whom the United States is obligated to make payments under an agreement of indemnification covering *such incident* . . . ." *Id.* § 2210(s) (emphasis added). Thus, if a public liability action can lead to a recovery without a showing of public liability—which in turn requires the occurrence of a nuclear incident—it undermines the "complex federal scheme" Congress has created to govern public liability actions under the PAA. *See O'Conner*, 13 F.3d at 1100 ("Congress recognized that state law would operate in the context of a complex federal

15

scheme which would mold and shape any cause of action grounded in state law.").

In sum, the PAA expressly provides that state law supplies the substantive rules of decision for a public liability action, "unless such law is inconsistent with the provisions of [42 U.S.C. § 2210]."  42 U.S.C. § 2014(hh). Yet recovery on a state law cause of action without a showing that a nuclear incident has occurred would circumvent the entire scheme governing public liability actions, which is clearly inconsistent with section 2210.[11]  Consequently, we hold that in order for a plaintiff to prevail in a public liability action, he must prove, rather than merely assert, public liability.  *See Cook*, 618 F.3d at 1139-40 (rejecting plaintiffs' argument "that they need only *assert* liability arising out of a nuclear incident" in order to recover under the PAA).

Here, plaintiffs cannot make the required showing.  As a result of the summary judgment on their bodily injury claims, the plaintiffs cannot establish public liability.  Having failed to prove that radiation exposure caused their bodily injuries, they cannot prove that a nuclear incident occurred—an "occurrence . . . causing . . . bodily injury . . . arising out of or resulting from the

---

[11] According to the dissent, allowing a plaintiff to pursue "other liability" beyond "public liability" in their "public liability action" is not inconsistent with section 2210, even though almost every provision governing "public liability actions" would be inapplicable to those claims.  The dissent explains that Congress contemplated that "public liability actions" could involve claims of "other liability," and affirmatively decided that section 2210's complex federal scheme would simply not apply to those claims.  The problem with this reading is that the statutory text does not contain even a whisper about liability other than "public liability," or a hint that an entire universe of claims—those not arising from a nuclear incident—would arise under section 2210, yet be governed by almost none of it.  Thus, the dissent's criticism of our reading applies with even greater force to its own: had Congress intended to create two classes of liability in a "public liability action," but subject only the "public liability" to the numerous provisions in section 2210, it most likely would have expressly said so.

radioactive, toxic, explosive, or other hazardous properties of source, special nuclear, or byproduct material." *Id*. § 2014(q).   Without such a showing, however, their "offensive contact" claims under Texas law are inconsistent with the PAA, and they cannot establish public liability, as they must in order to prevail in their public liability action.[12]

To be clear, the problem with the "offensive contact" claims is not, as defendants argue, that the PAA forbids courts from entertaining claims whose

---

[12]  The dissent criticizes our holding for limiting the types of successful claims in a "public liability action" to claims of "public liability," resulting in consequences that it believes Congress did not intend.  Those consequences are essentially that if a plaintiff asserts that a nuclear incident occurred, but cannot prove it, he will be unable to recover for damages allegedly resulting from that occurrence.  If, indeed, any "unintended consequences" flow from our straightforward reading of the statutory text, they result from Congress's decision to embed the notion of causation into the definition of a "nuclear incident."  See § 2014(q) (defining "nuclear incident" as "any occurrence . . . *causing* . . . bodily injury, sickness, disease, or death, or" property damage, "*arising out of or resulting from*" the hazardous properties of nuclear material (emphasis added)).

Moreover, our reading is surely more consonant with Congress's intent than the one proposed by the dissent, which would place absolutely no limits on the claims that a plaintiff could recover for in a "public liability action."  The dissent contends that the definition of "public liability" and "nuclear incident," although used throughout section 2210, nevertheless merely relate to jurisdiction and then have no further bearing upon the claims that can succeed under the PAA.  Thus, under the dissent's reading, the plaintiff need only assert, but never prove, the occurrence of a nuclear incident.  The plaintiff would then be assured the availability of a federal forum for any and all claims in the action—even those that bear no relationship to the alleged incident.  Recovery on any claims which do not arise from a nuclear incident and do not amount to claims of "public liability" would not be subject to the damage caps, recovery pooling, or insurance provisions of section 2210.  The substantive rules for decision for these claims would be derived from the law of the state in which the alleged nuclear incident occurred.  The upshot of all this is that by merely alleging a "nuclear incident," a plaintiff could pursue almost any claim, however unrelated to that incident, to recovery in federal court, with choice of law dependent entirely on where the plaintiff alleges the incident occurred.  Surely, this cannot be what Congress envisioned when it enacted the PAA.  In our view, the text compels the conclusion that "public liability" is the only kind of liability Congress contemplated in a "public liability action."  Thus, any recovery in such an action must be limited to claims for "public liability," such as those arising  from a "nuclear incident."

elements do not include physical injury, illness, or property damage—the harms the statute uses to define a "nuclear incident." *See id.* Rather, these claims are inconsistent with the PAA because, in this particular case, they would allow recovery without a showing that a nuclear incident occurred. In other words, had the plaintiffs successfully proven their bodily injury claims and thus established the occurrence of a nuclear incident, a recovery on their "offensive contact" claims would not be inconsistent with the PAA.[13]

The defendants are certainly correct that the statute defines a "nuclear incident" in part by referring to certain harms. Nothing in the statute, however, specifies that a "nuclear incident" may cause *only* those listed harms. An occurrence which causes a listed harm in addition to other harms does not thereby cease to be a "nuclear incident." Thus, the statute sets a minimum threshold of injury that an occurrence must cause before it constitutes a "nuclear incident" for purposes of the PAA. Reading this to limit the recoverable harms contravenes the plain language of the statute, which explicitly provides that "public liability" encompasses "*any* legal liability arising out of or resulting from a nuclear incident." 42 U.S.C. § 2014(w) (emphasis added). We therefore reject defendants' assertion that only the listed harms are compensable under the PAA. We instead agree with the Tenth Circuit that it is "the occurrence of a nuclear incident, and thus a sufficient injury under § 2014(q)" that is required

---

[13] Arguably, had even one plaintiff successfully proven a bodily injury claim, that would render the occurrence a "nuclear incident," and make all the other plaintiffs' claims consistent with the PAA. We need not decide the question to resolve this appeal, however.

in order to make a plaintiff's public liability action consistent with the PAA.[14] *Cook*, 618 F.3d at 1139-40.

The Ninth Circuit reached a similar conclusion in the factually analogous case of *Golden v. CH2M Hill Hanford Group, Inc.*, 528 F.3d 681, 683-84 (9th Cir. 2008). There, Golden asserted state law claims for physical injuries, as well as emotional distress, allegedly resulting from his exposure to nuclear radiation. *Id.* at 682-83. Just as in this case, the *Golden* court affirmed the district court's summary judgment on Golden's claims for physical injury, agreeing that he had failed to prove that radiation exposure caused his injuries. *Id.* at 683. The court then rejected his emotional distress claims. In doing so, the court concluded that "claims for exposure to radioactive materials are only compensable under the Price-Anderson Act if such exposure caused physical injury"—that is, if the exposure was a "nuclear incident" within the meaning of the PAA. *Id.* at 683 (internal quotation marks omitted) (citing *In re Berg Litig.*, 293 F.3d 1127, 1132-

---

[14] The dissent, relying on precedent developed under the Outer Continental Shelf Lands Act (OCSLA), accuses us of improperly replacing state rules of decision with newly created federal common law. Similar to the PAA, OCSLA imports state law rules of decision to the extent they are not inconsistent with certain provision of OCSLA or federal law. *See* 43 U.S.C. § 1333(a)(2)(A). Under that statutory regime, the Supreme Court reversed a Fifth Circuit decision which held that Lousiana's statute of limitations was inconsistent with the doctrine of laches, which the court applied as a matter of federal common law. *Chevron Oil v. Huson*, 404 U.S. 97, 101 (1971), *overruled on other grounds by Harper v. Virginia Dept. of Taxation*, 509 U.S. 86 (1993). The Supreme Court admonished that federal courts must not create new federal common law to override rules of state law under OSCLA. *Id.* at 103-05. In this case, our holding does not run afoul of the Court's teaching. We have not created a new rule of federal common law—or even identified an old rule of federal common law—and concluded that recovery on the "offensive contact" claims is inconsistent with that rule. Rather, engaging in statutory interpretation of the PAA itself, we have concluded that such a recovery is inconsistent with section 2210. *See* 42 U.S.C. § 2014(hh) ("[T]he substantive rules of decision in [a public liability action] shall be derived from the law of the State in which the nuclear incident involved occurs, unless such law is inconsistent with the provisions of [section 2210].").

33 (9th Cir. 2002)). As long as the exposure caused an injury sufficient to make the occurrence a "nuclear incident," a plaintiff's claims for non-listed harms arising out of that occurrence are not inconsistent with the PAA.[15] *See id.* ("Golden can't show that the exposure caused his physical injuries and without physical injury, he can't recover for psychic harm arising from exposure to radioactive materials.").

In this case, the plaintiffs' public liability action fails because they have not proven the occurrence of a nuclear incident. As the summary judgment on their bodily injury claims reflects, they have not shown that their radiation exposure caused their alleged physical injuries. Thus, they have not shown that their exposure constitutes a nuclear incident.[16] Accordingly, they may not

---

[15] To the extent some language in the Ninth Circuit's decision in *In re Hanford Nuclear Reservation Litig. (Phillips v. E.I. DuPont de Nemours & Co.)*, 534 F.3d 986 (9th Cir. 2008), might suggest that claims for non-listed harms are never compensable under the PAA, we respectfully disagree for the reasons already discussed. Whether a disagreement actually exists, however, is not entirely clear. In that case, the court stated that "claims for medical monitoring are not compensable under the PAA, because they do not constitute claims of 'bodily injury, sickness, disease, or death . . . .'" *Id.* at 1009 (quoting § 2014(q)). Yet on the same page, the court clarified that its decision in *In re Berg* meant "that medical monitoring claims [are] not compensable under the PAA *absent physical injury*." *Id.* (emphasis added)). Furthermore, a subsequent Ninth Circuit case cited *In re Hanford* for the proposition that "[e]xposure to radioactive materials is compensable only if it causes one of the harms on [the statutory] list," not that only the listed harms are compensable. *Dumontier v. Schlumberger Tech. Corp.*, 543 F.3d 567, 569 (9th Cir. 2008).

[16] We are not called upon to decide whether, should further injuries later appear which the plaintiffs believe result from their radiation exposure, the plaintiffs may then bring a new public liability action. We note, however, that defendants conceded in their brief and at oral argument that the plaintiffs may do so: "If a plaintiff . . . is diagnosed with cancer at some future point in time, the statute of limitations will begin to run when the cause of action accrues, which requires a manifest injury. This suit does not preclude plaintiffs from bringing a claim for a distinct injury, diagnosed at a later point in time."

No. 07-20939

recover on their "offensive contact" claims because such a recovery would be inconsistent with the PAA.

### III.

For these reasons, this panel unanimously AFFIRMS the district court's summary judgment dismissing the plaintiffs' bodily injury and illness claims with prejudice, and VACATES the district court's disposition of the plaintiffs' "offensive contact" claims; and a majority of this panel REMANDS the plaintiffs' "offensive contact" battery claims with instructions to dismiss them with prejudice.

No. 07-20939

DENNIS, Circuit Judge, concurring in part and dissenting in part.

I concur in the majority opinion's affirmance of the district court's summary judgment dismissing the plaintiffs' physical radiation injury and illness claims because the plaintiffs failed to adduce evidence to show that there is a genuine dispute as to the material fact issue of specific or individualized causation; that is, they failed to show that a reasonable trier of fact could find that their alleged bodily injuries and illnesses were caused by overexposure to radiation.[1] But I respectfully dissent from the majority's dismissal of the plaintiffs' "offensive contact" battery claims on the theory that the PAA implicitly abrogates personal injury claims that are not based on or incidental to "bodily injury, sickness, disease, or death, or loss of or damage to property, or loss of use of property." 42 U.S.C. § 2014(q). Had Congress intended to limit recovery to these categories of personal injury claims, it easily could have and probably would have plainly and expressly said so.[2] Instead, however, § 2014 of the PAA clearly uses the bodily injury and property damage terms only for a specific federal jurisdictional purpose: it (1) defines a "nuclear incident" as an occurrence causing bodily injury, sickness, disease, or death, or property damage

---

[1] I respectfully disagree in part with the majority's reasoning in basing its decision on rules of decision derived from *Merrell Dow Pharmaceuticals, Inc. v. Havner*, 953 S.W.2d 706, 720 (Tex. 1997). That was a Bendectin case in which the applicable rules of general or generic causation and individual or specific causation are different from those which should be applied in the instant nuclear radiation case. *See In re Hanford Nuclear Reservation Litig.*, 292 F.3d 1124, 1136-37 (9th Cir. 2002) (distinguishing Bendectin cases from radiation cases because "[r]adiation is capable of causing a broad range of illnesses, even at the lowest doses") (citing *In re TMI Litig.*, 193 F.3d 613, 643 (3d Cir. 1999)).

[2] Indeed, Congress spoke plainly and expressly in excluding from the definition of "public liability" workers' compensation claims, act of war claims, and certain property claims. 42 U.S.C. § 2014(w).

or loss resulting from the radioactive or other properties of specified nuclear material, 42 U.S.C. § 2014(q); (2) defines "public liability" as "any legal liability arising out of or resulting from a nuclear incident or precautionary evacuation," except for certain claims that are covered by workers' compensation, that arise from an act of war, or that involve harm to the licensed property where the nuclear incident occurs, *id*. § 2014(w); and (3) defines a "public liability action" as "any suit asserting public liability," which "shall be deemed to be an action arising under" the PAA, *id*. § 2014(hh).  Contrary to the majority opinion, I do not think Congress intended for these jurisdictional terms to serve the additional purpose of limiting the types of claims that may be brought in a public liability action or of providing an ordinary preemption defense against state-law tort claims.  The PAA's text and objectives contradict the majority's reading.

The PAA itself does not set forth the grounds for or the scope of a defendant's liability for nuclear torts; rather, § 2014(hh) provides that "the substantive rules for decision" in a public liability action "shall be derived from the law of the State" in which a nuclear incident occurs, "unless such law is inconsistent with the provisions of" 42 U.S.C. § 2210.  The PAA expressly excludes only three types of claims from public liability: workers' compensation claims, act of war claims, and certain types of property claims.  *Id*. § 2014(w).

Nothing in § 2210 expressly excludes, abrogates or modifies any particular kind of claim against a defendant in a public liability action.  Further, the substantive rules for decision derived from Texas law for the plaintiffs' "offensive contact" battery claims in this case are not inconsistent with any provision of § 2210.  Section 2210 "provide[s] certain federal licensees with a system of private insurance, Government indemnification, and limited liability for claims of 'public

liability.'" *El Paso Natural Gas Co. v. Neztsosie*, 526 U.S. 473, 476 (1999). Specifically, § 2210 provides two classes of defendants — Nuclear Regulatory Commission licensees and construction permitees, and Department of Energy contractors — with protection against public liability by (1) requiring that licensees shall maintain public liability insurance as prescribed by the Commission, (2) requiring the Commission and the Department to indemnify licensees and contractors against public liability in excess of the prescribed liability insurance coverage, and (3) providing that the aggregate public liability for a single nuclear incident shall not exceed certain specified dollar amounts. The statute, and regulations under it, limit the application of the insurance, indemnity, and liability cap provisions to coverage against liability resulting from bodily injury, sickness, disease, death, and property damage; but this, of course, is not the same thing as exempting all defendants from all other forms of personal injury liability.  Rather, it indicates only that Congress recognized that without such protections, licensees and contractors could be mulcted in damages for causing bodily injury, sickness, disease, death, or property damage or loss; and that Congress considered it important to offer licensees and contractors vehicles of protection from such liability "[w]ith the object of 'encourag[ing] the private sector to become involved in the development of atomic energy for peaceful purposes,'" *id.* at 476 (second alteration in original) (quoting *Duke Power Co. v. Carolina Envtl. Study Group, Inc.*, 438 U.S. 59, 63 (1978)).  Nothing in § 2210 immunizes licensees and contractors from liability for other kinds of harms or prevents them from providing their own self-insurance or private insurance against such liability.

24

No. 07-20939

The majority opinion cannot point to any part of § 2210 that clearly exempts nuclear licensees and contractors from liability for causing persons to suffer harms other than bodily injury, sickness, disease, death, or property damage or loss. Instead, the majority points to the coincidence that the assertion of one of those named perils is essential both to jurisdiction for a federal public liability action, per § 2014(hh), and to protection of licensees and contractors by the insurance, indemnity, and liability-cap provisions of § 2210. *See* Maj. Op. 13-15. Contrary to the majority's reasoning, however, this coincidence does not indicate that licensees and contractors are exempt from liability for having caused harms that did not involve bodily injury, sickness, disease, death or property damage. Instead, it clearly implies only that Congress considered it crucially important that licensees and contractors be offered protection from liability for those harms through § 2210.

By reading the PAA to exclude or bar any claim that is not based on or incidental to bodily injury, sickness, disease, death, or property damage or loss, the majority opinion gives those terms the effect of an ordinary preemption defense that extinguishes all other claims.[3] However, as the Supreme Court made clear in *El Paso Natural Gas*, the PAA provides not for ordinary preemption but for "complete preemption," 526 U.S. at 484 n.6, which converts all state-law claims into federal claims that are removable to federal court and

---

[3] The majority depicts the list of harms in § 2014(q) as a "threshold" of proof that must be met before a plaintiff may recover for any other kind of personal injury. But the list is a prerequisite only for jurisdictional purposes; that is, a personal injury plaintiff must allege the occurrence of a nuclear incident causing death, disease, sickness, bodily injury, or property damage or loss, in order to assert a public liability action arising under the PAA.

25

that, if removed, must be adjudicated there, *see id.* at 484-85. The majority's reading is therefore contrary to the Supreme Court's interpretation of the PAA.

The majority opinion's interpretation of the PAA will produce other results that Congress is unlikely to have intended. By reading into the PAA a blanket exclusion or bar to the recovery of damages that are not based on or incidental to the types of injuries named in the Act, the majority opinion grants an ordinary preemption defense to any defendant sued under the Act. In other words, persons other than nuclear licensees and contractors will be exempted from liability for causing personal injuries other than bodily injury, sickness, disease, death, or property damage or loss, although they have not qualified for or obtained licenses or contracts, and although they have not paid for the insurance or contracted for indemnity with the Department of Energy as required of licensees and contractors under § 2210. Thus, the majority opinion's reading of the PAA produces at least two effects that Congress likely did not intend: it overprotects nuclear licensees and contractors by exempting them from liability for causing the types of injuries for which Congress expected them to provide their own self-insurance or private insurance; and it protects persons other than licensees and contractors by barring their liability for personal injuries other than bodily injury, sickness, disease, death, or property damage or loss, despite their not having met the requirements that § 2210 places on licensees and contractors.

## 1.  Complete Preemption

The Supreme Court in *El Paso Natural Gas* explained that the PAA is an instance of "complete preemption," under which Congress has converted a public liability action and its individual claims into federal actions that are removable

to federal court and, when removed, must be adjudicated there.  This supports the view of the PAA that its plain words indicate — that personal injury plaintiffs are not restricted to recovery only for bodily injury, sickness, disease, death, or property damage, but may recover for injuries according to rules for decision derived from state law, unless such law is inconsistent with § 2210.  This also corroborates the conclusion that recovery for personal injuries other than bodily injury, sickness, disease, death, or property damage is not inconsistent with § 2210, which is discussed in more detail in the next section of this partial dissent.

Ordinarily, when a claim may be brought in either state or federal court, the plaintiff is master of the selection of jurisdiction.  A plaintiff is entitled to a state forum for the adjudication of most claims arising under state law, even when the defendant contends that federal law preempts those claims.  In a suit brought in state court under state law, "[f]ederal pre-emption is ordinarily a federal defense to the plaintiff's suit.  As a defense, it does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987).  However, this general rule making a plaintiff the master of his claim is subject to an important exception, known as "complete preemption."  Congress occasionally deems a defined class of common-law claims to be claims arising under federal law and entitles the defendant to choose a federal forum — not just for the ultimate adjudication of such claims on the merits, but also for the threshold inquiry into whether particular claims fall within the preempted class.  *See generally* 14B Charles Alan Wright et al., *Federal Practice and Procedure* § 3722.2 (4th ed. 2009).

No. 07-20939

In *El Paso Natural Gas*, the Supreme Court confirmed that the PAA, "[b]y its unusual preemption provision, . . . transforms into a federal action 'any public liability action . . . .'" 526 U.S. at 484 (quoting 42 U.S.C. § 2210(n)(2)). "The Act not only gives a district court original jurisdiction over such a claim, but provides for removal to a federal court as of right if a putative Price-Anderson action is brought in a state court. Congress thus expressed an unmistakable preference for a federal forum, at the behest of the defending party, both for litigating a Price-Anderson claim on the merits and for determining whether a claim falls under Price-Anderson when removal is contested." *Id.* at 484-85 (citations omitted). The Court stated that this statutory "structure, in which a public liability action becomes a federal action, but one decided under substantive state-law rules of decision that do not conflict with the Price-Anderson Act, resembles what we have spoken of as '"complete pre-emption" doctrine.'" *Id.* at 484 n.6 (citations omitted) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987)).[4]

The principal consequence of complete preemption, as distinguished from ordinary preemption, is that a defendant sued in state court may immediately remove the case to federal court; have the federal court resolve any dispute about whether the plaintiff's claims fall within the scope of the complete preemption scheme; and, if they do, have the federal court adjudicate the case on the merits if the plaintiff elects to proceed (and can proceed) with claims

---

[4] *See also Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003) ("[T]he Price-Anderson Act contains an unusual pre-emption provision, 42 U.S.C. § 2014(hh), that not only gives federal courts jurisdiction over tort actions arising out of nuclear accidents but also expressly provides for removal of such actions brought in state court even when they assert only state-law claims." (citing *El Paso Natural Gas*, 526 U.S. at 484-85)).

under federal law. *See Caterpillar*, 482 U.S. at 393-94; *Metro. Life*, 481 U.S. at 63-65. Significantly, a defendant's right to immediate federal court resolution of a preemption claim depends not on whether that claim is "obvious[ly]" correct at the outset, *see Metro. Life*, 481 U.S. at 66, or even on whether it is ultimately meritorious, *see, e.g., Caterpillar*, 482 U.S. at 399, but on whether it is a claim subject to complete, rather than ordinary, preemption.

The majority, in effect, erroneously reads the jurisdictional requirement of the assertion of a public liability action (to enforce liability for "bodily injury, sickness, disease, or death," or property damage or loss, caused by a nuclear incident) as an ordinary preemption provision that extinguishes all other personal injury claims. The majority's interpretation of the PAA contradicts and disregards *El Paso Natural Gas* and the PAA's complete preemption provision, 42 U.S.C. § 2014(hh). Congress could not have intended for the jurisdictional requirement of asserting a public liability action to do double duty as an ordinary preemption provision that extinguishes, instead of enforcing, the plaintiffs' "offensive contact" battery claims. Instead, the legislative intent inherent in the complete preemption provision of the PAA is to replace the plaintiffs' state-law claims with federal claims derived from state law which may be removed and, if removed, must be adjudicated in federal court.

## 2. The PAA's Text and Purposes

The majority opinion does not identify any provision of the PAA, nor any purpose for which the PAA was enacted or amended, that is actually inconsistent with anything in the plaintiffs' "offensive contact" battery claims derived from Texas law. "While the provisions of the PAA are complex, its chief feature is the creation of a public/private insurance system covering reactor accidents,

accompanied by a limitation (or 'cap') on aggregate liability to the public in the event of a major accident." Richard Goldsmith, *Regulatory Reform and the Revival of Nuclear Power*, 20 Hofstra L. Rev. 159, 163 n.11 (1991). Section 2210 is titled "Indemnification and limitation of liability." It requires some licensees, and allows the Nuclear Regulatory Commission to require other licensees, to maintain specified financial protection to cover "public liability claims," 42 U.S.C. § 2210(a); provides that the Commission shall agree to indemnify and hold harmless specified licensees and other persons from damages for "public liability arising from nuclear incidents which is in excess of the level of financial protection required" of them, *id.* § 2210(c); and limits "the aggregate public liability for a single nuclear incident of persons indemnified" to specified dollar amounts, *id.* § 2210(e). Nothing in § 2210 is inconsistent with a state or federal court holding a defendant of any kind, including a nuclear licensee or contractor, liable for nuclear-radiation-caused personal injuries not resulting in bodily injury, sickness, disease, death, or property damage. Section 2210 is focused on providing nuclear licensees and contractors with protection from public liability arising from nuclear incidents, but it does not exclude or bar other types of harms from reparation by state or federal courts.

Until the 1988 amendments to the PAA, personal injury claims arising from nuclear radiation were brought under state law, although federal law preempted state law in some important respects. Therefore, absent complete diversity, the federal courts lacked original jurisdiction to hear most such claims. *See In re TMI Litig. Cases Consol. II*, 940 F.2d 832, 857 (3d Cir. 1991). That jurisdictional impediment assumed particular importance after the nuclear accident at Three Mile Island in 1979, which gave rise to "150 separate cases

No. 07-20939

against [Three Mile Island] defendants, with over 3,000 claimants, in various state and Federal courts." S. Rep. No. 100-218, at 13 (1987). There was then no mechanism for removing those cases to a single federal court. The then-existing removal and consolidation provisions of the PAA were confined to "extraordinary nuclear occurrences," *see* 42 U.S.C. § 2014(j), and the Commission had not declared the Three Mile Island incident to be such an occurrence. The resulting proliferation of uncoordinated lawsuits led Congress to amend the PAA's removal and consolidation provisions to encompass cases arising out of any "nuclear incident." *See* 42 U.S.C. § 2014(hh); *id.* § 2210(n)(2). To ensure removability, Congress converted "any suit asserting public liability" for a nuclear incident into "an action arising under" the PAA. *Id.* § 2014(hh).

In this case, the plaintiffs brought suit in state court alleging that they sustained both physical injuries and offensive contact batteries as the result of a nuclear incident, and the defendants — taking advantage of the PAA — removed the entire case to federal court because it is a "suit asserting public liability" under the PAA. The federal district court rendered partial summary judgment against the plaintiffs because of the absence of a genuine issue as to the causation of their physical injuries by the alleged nuclear incident. Now, the majority holds that the dismissal of those claims also causes the plaintiffs' remaining claims — which involve battery by "offensive contact" and do not require proof of physical injury — to essentially be preempted and extinguished. The majority holds that those remaining claims must be dismissed, even though there has been no showing that the plaintiffs are unable to establish any of the elements of those claims. I would instead hold that those remaining claims must be adjudicated in accordance with the substantive rules for decision derived from

31

state law, because the defendants have failed to show that the rules for decision of those claims are inconsistent with § 2210.

The PAA determines whether an action is a "public liability action" based on what a plaintiff "assert[s]," and not based on what the plaintiff is ultimately able to prove. *Id.* § 2014(hh). This determination has to be made at the time the action is either filed in, or removed to, a federal court, because the federal court has to determine whether it has jurisdiction over the case. Any case in which public liability for a nuclear incident is asserted is a "public liability action" to be adjudicated according to "substantive rules for decision" drawn from state law, "unless such law is inconsistent with the provisions of" § 2210. *Id.* There is no provision of §2210 that is inconsistent with the rules for decision derived from Texas law in plaintiffs' "offensive contact" battery claims in this case. Nor is there any provision of the PAA which requires a plaintiff to prove that a "nuclear incident" has occurred before he or she can recover on any claim.[5] Therefore, the plaintiffs should be able to proceed with their battery claims in the federal district court under the rules of decision derived from Texas law.

As the majority recognizes, "'The objective of a court called upon to interpret a statute is to ascertain congressional intent and give effect to legislative will.' The clearest indication of congressional intent is the words of the statute itself." *Davis v. Johnson*, 158 F.3d 806, 810-11 (5th Cir. 1998) (citation omitted) (quoting *Johnson v. Am. Airlines, Inc.*, 745 F.2d 988, 992 (5th

---

[5] As a practical matter, many kinds of state-law radiation tort claims require a plaintiff to allege that he or she has suffered some kind of bodily injury, illness, or property damage, which coincidentally may meet the definition of a "nuclear incident" under § 2014(q). But the PAA provides that state-law rules of decision, not § 2014(q)'s definition of a "nuclear incident," determine what a plaintiff must prove in order to recover on a tort claim in a "public liability action."

Cir. 1984)). The words of § 2210 of the PAA do not require the plaintiffs to prove that a "nuclear incident" has occurred in order to pursue their "offensive contact" battery claims derived from state law. Furthermore, the statute's legislative history shows that the intention of Congress in enacting and amending the PAA was to preserve state tort law as much as possible. The report of the House Committee on Interior and Insular Affairs concerning the bill that became the Price-Anderson Amendments Act of 1988 declared that "the policy of only interfering with state tort law to the minimum extent necessary [is] a principle which has been embodied in the Price-Anderson Act for the last 30 years." H.R. Rep. No. 100-104, pt. 1, at 20 (1987). Consistent with this clearly stated congressional policy, courts ought not to read the PAA as impliedly putting up additional hurdles that are not found in either the relevant state law or the text of the PAA.

The majority's reading of the PAA contravenes the main purpose of the 1988 amendments, in which Congress in light of Three Mile Island provided that actions involving assertions of liability from "nuclear incidents" would be "public liability actions" deemed to arise under the PAA and to be removable and fully litigable in federal court. The purpose was to improve the manageability and fairness of litigation arising from nuclear accidents like Three Mile Island by making it possible to consolidate multiple suits in a single federal court. *See El Paso Natural Gas*, 526 U.S. at 477, 486. This goal is not furthered by the majority's holding that the PAA exempts radiation suit defendants from all liability, except for claims based on or incidental to bodily injury or property damage. Future radiation victims who prefer to litigate their radiation claims in state court are encouraged by the majority's interpretation of the PAA to file

separate non-bodily injury suits in state court and to avoid pleading a public liability action in every case, so as to prevent or deter the removal of their state-law suits to federal court and the automatic extinguishment of claims that are not based on or incidental to successful bodily injury or property damage claims. The likely multiplication of artfully pleaded state court suits is apt to seriously undercut the 1988 amendments' clear goal of removal and consolidation of radiation suits to promote the efficient, fair and consistent resolution of claims arising from alleged or asserted nuclear incidents.

Indeed, the majority's reading of the PAA would impede Congress's purposes in the event of a future accident exactly like Three Mile Island. Ultimately, Three Mile Island does not appear to have caused any bodily injuries, sickness, disease, or death. Eric R. Pogue, *The Catastrophe Model of Risk Regulation and the Regulatory Legacy of Three Mile Island and Love Canal*, 15 Penn St. Envtl. L. Rev. 463, 467-72 (2007); *see In re TMI Litig.*, 193 F.3d 613 (3d Cir. 1999) (affirming grant of summary judgment in defendants' favor on some Three Mile Island-related personal injury claims). Therefore, if a similar incident were to occur in this circuit in the future, numerous plaintiffs would likely file separate suits in state court alleging only non-physical harms, in order to avoid having those claims brought into federal court and extinguished. The majority thus encourages the same proliferation of separate state-court lawsuits that Congress sought to prevent.

In an analogous statutory context in which Congress similarly provided for state law to serve as the source for federal rules for decision, our court and the Supreme Court have emphasized that courts should follow the applicable state law and refrain from creating additional rules of federal law. Similar to

the PAA, the Outer Continental Shelf Lands Act (OCSLA) provides for the application of state law as federal law. *See In re TMI Litig. Cases Consol. II*, 940 F.2d 832, 856 (3d Cir. 1991) (citing 43 U.S.C. § 1333(a)(2)). In an OCSLA case, *Chevron Oil Co. v. Huson*, 404 U.S. 97 (1971),[6] the Supreme Court explained: "Congress specified that a comprehensive body of state law should be adopted by the federal courts in the absence of existing federal law. . . . Thus, Congress . . . did not intend that federal courts fill in . . . 'gaps' [in federal statutes] by creating new federal common law." *Id.* at 104-05. Thus, "federal courts should not create interstitial federal common law when the Congress has directed that a whole body of state law shall apply." *Id.* at 105 n.8. Accordingly, in *Fontenot v. Dual Drilling Co.*, 179 F.3d 969 (5th Cir. 1999), we observed that "our Circuit has consistently rejected attempts of litigants to have 'federal common law' override rules of Louisiana tort law" in the OCSLA context. *Id.* at 977; *see also Olsen v. Shell Oil Co.*, 708 F.2d 976, 979 (5th Cir. 1983) (following *Huson* and deploring the creation of new federal common law in this context). In this case, the majority's imposition of an additional threshold requirement of proof of bodily injury, sickness, disease, death, or property damage fails to follow the example of these instructive OCSLA cases, and likewise fails to carry out the intent of Congress to "only interfer[e] with state tort law to the minimum extent necessary" through the PAA. H.R. Rep. No. 100-104, pt. 1, at 20 (1987).

In short, neither the words nor the purposes of the PAA support the majority's reading into the Act of a threshold requirement that the plaintiffs must succeed with a bodily injury, sickness, death, or property damage claim in

---

[6] *Huson* was overruled in part, on other grounds that are not relevant here, by *Harper v. Virginia Department of Taxation*, 509 U.S. 86 (1993), as recognized in *Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 753 (1995).

No. 07-20939

order to pursue their offensive contact battery by radiation claims. The majority's interpretation of the Act conflicts with Congress's stated policies of minimizing interference with state law under the PAA and of fostering the removal, consolidation and uniform litigation of claims arising out of alleged or asserted nuclear incidents. The plaintiffs' claims of battery by "offensive contact" should be resolved under substantive rules of decision derived from Texas law, as required by § 2014(hh), because they are not inconsistent with § 2210 and because, as the Supreme Court made clear in *El Paso Natural Gas*, they are subject to complete preemption, removal, and full litigation, rather than extinguishment, in the federal district court under the PAA.